UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUSINESS PRO COMMUNICATIONS, INC. ) <br> an Illinois corporation and TUNICA ) <br> PHARMACY, INC., individually and as the ) <br> representatives of a class of similarly-situated ) <br> persons, ) <br>        Plaintiffs, ) <br>  ) <br>           v. ) <br>  ) <br> EXPRESS PRODUCTS, INC., ) <br>        Defendant. ) | <br><br><br><br><br><br>No. 04 L 1043<br><br>Judge St. Eve<br><br><br> |

**PLAINTIFFS' MOTION FOR REMAND**

Plaintiffs Business Pro Communications, Inc. ("Business Pro") and Tunica Pharmacy, Inc. ("Tunica"), pursuant to 28 U.S.C. § 1447(c), move to remand this action back to the Circuit Court of Lake County, Illinois.

**INTRODUCTION**

Business Pro filed this action in state court on December 30, 2004. After more than three years of litigation, Defendant improperly removed the case to federal court. Defendant's Notice of Removal (Doc # 1) alleges both "conventional diversity" jurisdiction and diversity jurisdiction under the Class Action Fairness Act.[1] The Court should remand the case to state court.

First, Defendant waived its right to remove and removal for "conventional diversity" is untimely. Defendant could have removed this action for federal question jurisdiction in 2005, but chose to stay in state court. Furthermore, Defendant always knew that it sent scores of illegal advertising faxes to Business Pro—more than $75,000 in controversy—but Defendant chose to stay in state court. "Conventional diversity" removal now is untimely.

---

[1] Defendant did not remove this case for federal question grounds, presumably because it knew such removal would be untimely.

1

Second, removal under CAFA is inappropriate because this case was filed on December 30, 2004. CAFA applies only to cases commenced after the statute's effective date, February 18, 2005. Defendant argues the Amended Complaint "commenced" a new action by adding Tunica as an additional class representative and by pleading additional facts about the junk faxes Defendant sent to Business Pro. Defendant is incorrect. Adding a class representative does not commence a new action or create a basis for CAFA removal. *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006). Further, the case has always been about all junk faxes Defendant sent Business Pro and others during the class period and the Amended Complaint did not "commence" any new action. The Amended Complaint did not add any new claim or any new defendant. Finally, the Amended Complaint <u>narrowed</u> the class definition. Even expanding the class definition to add new class members is a "routine" amendment that "does not commence a new suit." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 749 (7th Cir. 2005); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

## BACKGROUND

1.      On December 30, 2004, Business Pro filed a three-count Class Action Complaint ("Original Complaint") alleging that defendant Express Products, Inc. ("Defendant") had faxed unsolicited advertisements ("junk faxes") in violation of: (1) the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), (2) common law conversion, and (3) the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 (and substantially similar consumer protection statutes). *See* Notice of Removal (Doc. 1), Exhibit A at ¶ 4 (Doc. 1-2).

2.      The Original Complaint challenged "Defendant's policy and practice of faxing unsolicited advertisements to persons in Illinois and other states." Doc. 1-2 ¶ 1. The Original Complaint sought "statutory damages for each violation of the TCPA." *Id.* at ¶ 5. Defendant

2

"sent thousands of similar unsolicited facsimile advertisements throughout the United States." *Id.* at ¶ 13.  The Original Complaint attached three of the junk faxes Business Pro received from Defendant.  *Id.* at ¶ 11.  The Original Complaint alleged claims about "Exhibits A, B, and C and other unsolicited fax advertisements."  *Id.* at ¶ 17(b)(iii).

3.  The Original Complaint challenged every junk fax Defendant had sent to any person within the applicable limitations periods, alleging three classes:

   The TCPA Class:

   All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, and (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes.  [Doc. 1-2 ¶ 16.]

   The Conversion Class:

   All persons who (1) on or after five years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, and (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes.  [Doc. 1-2 ¶ 30.]

   The Statutory Unfair Practices Class:

   All persons who (1) on or after three years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, and (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes.  [Doc. 1-2 ¶ 40.]

4.  Defendant has always known that it faxed thousands of advertisements to the defined classes.  Even a cursory reading of the Original Complaint informed Defendant that Business Pro was challenging every advertising fax Defendant sent during the specified periods.

5.  On March 10, 2006, Defendant's counsel sent Plaintiff's counsel a letter

3

explaining that "defendant estimates that on approximately 40 separate occasions, it sent 2,000 to 3,000 facsimiles on each occasion."  A true and correct copy is attached as Exhibit A.

6.    Moreover, even ignoring the Original Complaint, Defendant "learned" during the litigation that Business Pro is challenging all of Defendant's thousands of junk faxes, not just the three examples Business Pro attached to the Original Complaint.

7.    On March 31, 2006, Plaintiffs' counsel sent Defendant's attorneys copies of the documents and a cd-rom Defendant's fax broadcasting service (Mail2Media) produced pursuant to subpoena.  A true and correct copy of that letter is attached as Exhibit B.  The letter enclosed copies of the advertising faxes Defendant sent, copies of the transmission reports for those broadcasts, and copies of the invoices Defendant had paid during the period 2002-2004.  Even if Defendant no longer possessed copies of all that information, it received new copies from Plaintiffs' counsel in early 2006.

8.    On January 19, 2007, Defendant's owner (Dan Geiger) testified about paying Mail2Media five cents per fax (p. 20), about faxing advertisements "about 40 times a year" (p. 28), including 2,258 faxes on a single date in February 2002 (P. 101), and about Defendant lacking any document showing Business Pro had ever requested to receive advertisements by fax (pp. 66-69).  A true and correct copy of the deposition transcript is attached as Exhibit C.

9.    On January 30, 2007, Robert Demyanovich of Mail2Media was deposed primarily about the invoices and computer files showing the many thousands of advertisements Defendant faxed during the period 2002-2004 using the Mail2Media fax broadcasting system.  A true and correct copy of the deposition transcript is attached as Exhibit D.  The invoices (Exhibit 1 to the deposition) are attached as Exhibit E.  Mr. Demyanovich testified that Defendant was the master of its own junk fax campaign, delivering the faxes and recipient lists to Mail2Media and

directing when they were sent.

10. On March 19, 2007, Business Pro answered Defendant's Supplemental Request for Production of Documents, producing (as requested) copies of the 117 junk faxes Defendant had sent Business Pro during the class period. A true and correct copy is attached as <u>Exhibit F</u>.

11. On November 20, 2007, Plaintiff requested leave to file an Amended Complaint, attaching the proposed pleading.[2] On February 7, 2008, over Defendant's objections, the court granted Plaintiff's request. On March 5, 2008, Defendant filed its Notice of Removal (Doc. 1).

12. The Amended Complaint (1) adds Tunica as an additional class representative, (2) identifies and attaches more of the junk faxes Defendant faxed to Business Pro during the class period, and (3) <u>narrows</u> the class definitions to exclude any person with whom Defendant had an "established business relationship." It adds no cause of action or defendant.

## GOVERNING LEGAL STANDARD

13. Defendant has the burden of establishing that jurisdiction is proper. "[I]t is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction." *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 447 (7th Cir. 2005). *See also In re Matter of the Application of County Collector of the County of Winnebago, Illinois,* 96 F.3d 890, 895 (7th Cir.1995); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). CAFA did not change this well-established rule. *Brill*, 427 F.3d at 447 ("The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time.").[3]

---

[2] Defendant's counsel sent a letter to the Court on March 6, 2008, purportedly enclosing a box of copies of "all process, pleadings, and orders." Defendant did not provide Plaintiffs a copy of what was sent, but Plaintiffs assume Defendant actually sent "all process, pleadings, and orders" from the years of state court proceedings.

[3] The Second, Third, Ninth, and Eleventh Circuits have all ruled the same. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007) (citing cases while observing this "longstanding, near-canonical rule").

5

**ARGUMENT**

A.  **DEFENDANT FAILED TO REMOVE THIS CASE ON FEDERAL QUESTION GROUNDS IN 2005 AND, THEREFORE, WAIVED ANY RIGHT TO REMOVE LATER ON OTHER GROUNDS.**

14. The Original Complaint stated a TCPA claim. Therefore, the Original Complaint was removable on federal question grounds. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450-51 (7th Cir. 2005).

15. Section 1446(b) requires that removal "shall be filed within thirty days":

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. [28 U.S.C. § 1446(b).]

16. The procedural requirements governing removal, including Section 1446(b)'s thirty-day time limit, are "mandatory and strictly applied." *Locklear Electric v. My Overhead Corp.*, Civil No. 07-788-GPM, 2007 WL 4225732, *3 (S.D. Ill. Nov. 26, 2007) (Murphy, J.) (citing cases) (copy attached as Exhibit G). It is "defendant's responsibility to ascertain from a reasonable and commonsense reading of the complaint whether the action is removable." *Id*.

17. *Brill* held that a TCPA claim is removable for federal question jurisdiction. On its face, the Original Complaint stated a claim for violation of the TCPA. Just as the *Brill* defendant removed that action within thirty days of receiving the complaint, Defendant should have removed this action within thirty days of receiving the Original Complaint, if Defendant wished to proceed in federal court. Defendant's failure to do so is fatal to removal and requires remand regardless of the amount in controversy or the applicability of CAFA. 28 U.S.C. § 1446(b).

18. Other judges have found untimely removal in junk fax cases, where the defendant failed to remove within thirty days of receiving the complaint. *See G.M. Sign, Inc. v. Global*

6

*Shop Solutions, Inc.*, 430 F. Supp. 2d 826, 829 (N.D. Ill. 2006) (Gettleman, J.) ("If the action was originally removable, defendant's present removal is untimely.") (copy attached as Exhibit H); *C.E. Design, Ltd. v. Kallman Worldwide, Inc.*, 2006 WL 3518365, *2 (N.D. Ill. Dec. 5, 2006) (Guzman, J.) (remanding untimely removal and awarding fees) (copy attached as Exhibit I).

19. Because Defendant did not remove this case within thirty days of receiving the Original Complaint, Defendant waived its right to remove the case later on some other ground. *See Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 966 (7th Cir. 1982) (where original complaint contained allegations of constitutional violations and did not timely remove, the addition of new federal claims in an amended complaint would not revive defendant's right of removal); *Locklear, supra,* 2007 WL 4225732 at *2-3 ("The rationale underlying the requirement of prompt removal of cases in which federal jurisdiction is apparent on the face of a complaint is to avoid gamesmanship and needless delay of litigation through belated removal.") (Exhibit G); *Herschman v. Travelers Ins. Co.*, No. 89 C 1109, 1989 WL 111848, at *2 (N.D. Ill. Sept. 21, 1989) (Marovich, J.) (defendant waived the right to remove because original complaint asserted federal claims and the addition of new federal claims did not revive defendant's removal rights) (copy attached as Exhibit J); *FDIC v. Generes*, 650 F. Supp. 66, 68 (N.D. Ill. 1986) (Shadur, J.) ("FDIC suggests no compelling reason for its more than two-year delay in exercising its right to seek removal. This Court cannot now permit FDIC to remove simply because it has become tactically advantageous to do so. That would not only be unfair to Genereses, but it would also be a complete waste of the state court's and this Court's resources.").

**B.  DEFENDANT'S REMOVAL FOR "CONVENTIONAL DIVERSITY" IS UNTIMELY AND IMPROPER.**

20. Defendant argues, "[t]his Notice of Removal is timely and proper in accordance with 28 U.S.C. § 1446(b) because Defendant [filed it] within 30 days after service of (and filing

7

of) the Amended Complaint, which occurred on February 7, 2008." *See* Notice of Removal at 13.

21.     Defendant is attempting to take advantage of the "amended pleading, motion, order or other paper" clause in Section 1446(b):

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." [28 U.S.C. § 1446(b).]

22.     Defendant's argument misses its mark for several reasons.

23.     First, because "the case stated by the initial pleading" *was* removable for federal question jurisdiction, the express language of Section 1446(b) prevents Defendant from using the amended complaint as the basis for removing this case to federal court.

24.     Second, "the case stated by the initial pleading" was removable for diversity jurisdiction because Defendant knew Business Pro was suing about all junk faxes Defendant sent Business Pro during the applicable limitations periods. The Original Complaint expressly challenged every illegal advertising fax Defendant sent. The class definitions could not have been more clear about the scope of this case. Certainly, Defendant knew that it had faxed scores of advertisements to Business Pro.

25.     Third, even assuming, *arguendo*, that "the case stated by the initial pleading" was not removable, Defendant failed to remove within thirty days after receiving "a copy of … other paper from which it may first be ascertained that the case is one which is or has become removable." Federal courts have interpreted this provision to include discovery materials. *E.g.*, *Gilardi v. Atchison, Topeka and Santa Fe Railway Co.*, 189 F. Supp. 82, 84 (N.D. Ill. 1960) (Igoa, J.) ("Plaintiff's discovery deposition …, even though not required to be filed, was a sufficient 'other paper' within the meaning of Section 1446(b) from which the defendant first

ascertained that the cause was removable…."); *Haber v. Chrysler Corp.*, 958 F. Supp. 321, 326 (E.D. Mich. 1997) (Rosen, J.) ("[I]t is well-settled that where a plaintiff makes a disclosure in discovery responses which reveals that a case is removable, the defendant has thirty days from that disclosure to remove."**);** *Oehlman v. Wal-Mart Stores East, LP*, No. 2:06 CV 055, 2006 WL 1043465, *1 (N.D. Ind. Apr. 19, 2006) (Moody, J.) ("Courts have construed the 'other paper' requirement to include documents from state court proceedings, such as discovery depositions, interrogatory answers, and any 'official papers' filed with the 'action sub judice' or given under 'oath' in connection with the action.") (copy attached as Exhibit K).

26. Defendant argues that it was unable to ascertain, before February 7, 2008, that Business Pro's claims were removable for diversity. 28 U.S.C. § 1446(b). Without evidentiary support, Defendant argues that only after reading the Amended Complaint did it learn that Business Pro had "received eighty facsimile transmissions from the Defendant" at up to $1,500 per violation with treble damages and, thus, "the amount in controversy between one of the Plaintiffs, Business Pro, and on the Defendant, Defendant, is at least $120,000." *See* Notice at 5.

27. Obviously, however, Defendant has always known how many ads it faxed to Business Pro. Even ignoring that, Defendant certainly "learned" during discovery in 2006 and in 2007 that Business Pro was challenging—not surprisingly—every junk faxes Defendant sent Business Pro; not just the three attached to the Original Complaint. *See* Paragraphs 5-11, *supra*. Consequently, Defendant's "conventional diversity" removal is untimely.

28. Finally, Defendant's removal for "conventional diversity" is untimely under Section 1446(b)'s one-year removal rule. 28 U.S.C. § 1446(b) ("…except that a case may not be removed on the basis of jurisdiction conferred by Section 1332 of this title more than one year after commencement of the action"). Defendant argues CAFA eliminated this rule. Notice of

Removal, p. 4 ("One way in which original jurisdiction under 1332 was expanded is via the addition of 28 U.S.C. § 1453, added to erase the one-year limit for removal of class actions pursuant to Section 1332.").[4] Defendant is wrong, because that change applies only to CAFA removals. 28 U.S.C § 1453(b) ("A class action may be removed to a district court of the United States in accordance with [28 U.S.C. §] 1446 (except that the 1-year limitation under section 1446(b) shall not apply)….").

29.     In any event, "[t]he language referring to the one-year bar modifies only the second paragraph of § 1446(b), and thus 'only applies to cases that were **not** removable to federal court when originally filed.'" *Carter v. Frito-Lay, Inc.*, 144 Fed. Appx. 815, 817 (11th Cir. 2005) (emphasis added). Because the TCPA claim alleged in the Original Complaint made the case removable on federal question grounds in 2005, nothing in the Amended Complaint could have triggered a new removal period.

### C.     CAFA DOES NOT PROVIDE REMOVAL JURISDICTION IN THIS CASE.

30.     Even assuming that Defendant has not waived its right to removal (for all the reasons stated above), Defendant's final reason for removal–CAFA jurisdiction–does not apply.

31.     CAFA applies only to actions "commenced on or after the date of the enactment" of February 18, 2005. Class Action Fairness Act of 2005, Pub. L. No. 109-2 § 9, 119 Stat. 14. CAFA is not retroactive. *E.g., Knudsen v. Liberty Mutual Ins. Co.*, 435 F.3d 755 (7th Cir. 2006) ("Last year we held that the initial removal was unavailing, because the suit had been 'commenced' in state court before February 18, 2005, the new Act's effective date.").

---

[4]     CAFA "did not, however, alter the requirement that defendants must file a 'notice of removal … within thirty days after receipt … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is on which is or has become removable.'" *Babasa v. Lenscrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007)(quoting 28 U.S.C. § 1446(b)). "If a notice of removal is filed after this thirty-day window, it is untimely and remand to state court is therefore appropriate." *Id.*

32. "Workaday changes routine in class suits" do not "kick off wholly distinct claims." *Schorsch v. Hewlett-Packard*, 417 F.3d 748, 751 (7th Cir. 2005). When an amendment relates back to the original complaint, the amendment will not "commence" a new suit for CAFA purposes. *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006).[5] Under both Illinois and federal law, an amendment relates back when it arises out of "the same transaction or occurrence set up in the original pleading." *Id*. at 788.

33. Plaintiff filed its original Complaint on December 30, 2004, before CAFA's enactment. The Amended Complaint is essentially the same, as it merely adds Tunica as a named plaintiff, adds facts about Business Pro's claims, and narrows the class definitions.

**C.1. Adding Tunica To The Case As A Class Representative Plaintiff Did Not "Commence" A New Action.**

34. Adding another class representative does not commence a new action or create a basis for CAFA removal. "[T]he addition of such [newly named] plaintiffs in the two cases before us did not commence new suits." *Phillips*, 735 F.3d at 787-88. "Relation back to add named plaintiffs in a class action suit is of particular importance because of the interests of the unnamed members of the class." *Id*. *See also Natale v. General Motors Corp.*, 2006 WL 1458585, *2 (7th Cir., May 8, 2006 ) (discussing *Phillips*: "There the initial plaintiff was unsatisfactory too, but this court held that even if a lawsuit is started with the wrong class representative, the plaintiffs can amend and add new class representatives without commencing a new lawsuit for CAFA purposes.") (attached as Exhibit L).

**C.2. To The Extent It Is Based Upon The Amended Complaint's References To The Scores Of Junk Faxes Sent To Business Pro, Removal Is Untimely.**

35. As argued above in paragraphs 5-11, *supra*, Defendant received "other paper" in

---

[5] "An amended complaint kicks off a new action only if, under the procedural law of the state in which the suit was filed, it does not 'relate back' to the original complaint." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006).

2006 and in 2007 about Business Pro challenging all junk faxes Defendant sent Business Pro, not just the three forms attached to the Original Complaint. Nevertheless, Defendant failed to remove within 30 days of receiving such "other paper."

### C.3. References In The Amended Complaint To Scores Of Junk Faxes Sent To Business Pro Did Not "Commence" A New Action.

36. Defendant argues the Amended Complaint creates a "new controversy" because: (1) for Business Pro alone, "the temporal analysis at issue has expanded from two months [July-August 2004] to approximately 32 months [February 2002 – October 2004]"; (2) for Business Pro alone, "the damages sought, now, could be 25-times the amount available under the Original Complaint"; and (3) "the factual averments of the Amended Complaint are different in character" because "[t]he faxes Tunica claims violated the TCPA were not part of the facsimiles at issue in the Original Complaint." *See* Notice of Motion at 10, 11, and 12. Defendant's arguments are false. This case about Defendant's junk faxes—all of them—has been the same for the last three years, even with the Amended Complaint.

37. "The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006).

38. The Illinois Supreme Court has recently held that, under the circumstances of the instant case, relation back is appropriate where, as here, "there is a 'sufficiently close relationship' between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury." *See Porter v. Decatur Memorial Hospital*, No. 104441, 2008 WL 217204, *8 (Ill. Jan. 25, 2008) (adopting a "sufficiently-close-relationship test").

39.     The Original Complaint expressly alleged class claims about Defendant's junk faxes as far back as December 30, 1999. *See* Original Complaint at ¶¶ 16, 30, and 40 which included, *e.g.* "all persons who (1) on or after five years prior to the filing of this action [on December 30, 2004]…." Yet Defendant feigns surprise and pretends that it only knew about the time period from July-August 2004 and arguing that the "temporal analysis at issue has expanded from two months to approximately 32 months." *See* Notice of Motion at 10. This is false. Defendant has <u>always</u> been on notice from the Original Complaint that this action included as much as sixty (60) months worth of unlawful conduct. *See* Original Complaint at ¶ 30.

40.     Defendant argues that because the allegations related to Business Pro's damages "could be 25-times" greater than originally plead, Defendant "has now been blindsided by a mammoth increase in its exposure to the named plaintiffs" in this case. *See* Notice of Motion at 10. This assertion is also false. Defendant has always known that this case was about all the junk faxes it sent it sent Business Pro during the class periods.

41.     From day one, this case has been a class action "involving thousands of persons in Illinois <u>and throughout the United States</u>…." *See* Original Complaint at ¶ 17(a) (emphasis added). The allegations related to the named plaintiffs have been added or changed slightly, but Defendant has always known about the damages it caused the class pleaded from the very beginning. Whatever the damages to the named plaintiffs, they are certainly dwarfed by the damages to the class as a whole. Defendant can hardly claim that a "New Controversy" has erupted with "25 times greater damages" as a result. Such an assertion makes little sense.

42.     In any event, as the Appellate Court explained in *Knudsen*:

> Now as a matter of normal language (and normal legal practice) a new development in a pending suit no more commences a new suit than does its removal. Plaintiffs routinely amend their complaints, and proposed class definitions, without any suggestion that they have restarted the suit-for a restart

(like a genuinely new claim) would enable the defendant to assert the statute of limitations. Liberty Mutual concedes that routine changes do not allow removal but insists that a "substantial" or "significant" change must do so. Yet significance is not the measure of a new claim; a plaintiff may assert an entirely novel legal theory in midsuit without creating a "new" claim in the sense that the defendant could block it by asserting that it had been propounded after the period of limitations expired. Moreover, "significance" often lies in the eye of the beholder; it is not a rule of law so much as it is a cast of mind or an assessment of likely consequences, which may be difficult if not impossible to foresee. A doctrine of "significant change" thus would go against the principle that the first virtue of any jurisdictional rule is clarity and ease of implementation. [*Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).]

43.     The Amended Complaint in this case contains none of the changes the Appellate Court has indicated would "commence" a new action. "As we have already hinted, however, a new claim for relief (a new "cause of action" in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes. *Knudsen,* 411 F.3d at 807.

44.     Defendant was "made aware of the occurrence or transaction which is the basis for the claim," such that it would "be able to defend against the plaintiff[s'] claim, whatever theory it may be predicated upon." *Pierce v. Joe Keim Builders, Inc.*, 274 Ill. App. 3d 371, 374, 653 N.E.2d 928 (Ill. App. Ct. 1995) (citations omitted) ("Thus, an amended complaint relates back only when the original complaint supplies defendant with all the information necessary to prepare the defense to the claim asserted in the amended pleading."). Rather than being "surprised" by the amplification or addition of the allegations related to the named plaintiffs, through the Original Complaint Defendant has always known the scope of this case.

**C.3.    The Amended Complaint Does Not Add Any New Cause Of Action.**

45.     Finally, Defendant argues that "Plaintiffs seek injunctive relief in Counts I and III, whereby they request an equitable remedy about which Defendant had not previously been

14

notified.  Plaintiffs also specifically allege an ICFA claim, not pleaded in the Original Complaint…." *See* Notice of Motion at 12.  Both of Defendant's assertions are false.

46.    First, the Original Complaint did include an ICFA Claim.  *See* Original Complaint at ¶ 4 ("…Plaintiff brings this case as a class action asserting claims against Defendant under … the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2….").  Second, with regard to the injunctive relief, the Original Complaint provided for injunctive relief.  *See* Original Complaint at ¶ 2 ("The TCPA provides a private right of action for violations, … and authorizes injunctions against the wrongdoer. 47 U.S.C. § 227(b)(3)); *Id.* ¶ 15 ("Plaintiff incorporates the preceding paragraphs as though fully set forth herein.").  In any event, injunctive relief does not commence a new action and the injunction would merely enjoin Defendant from further violations of the law.

## CONCLUSION

47.    Defendant's Notice of Removal is untimely and improper.  The Amended Complaint did not commence a new action, but rather "relates back" to the Original Complaint. The claims in the Amended Complaint are the same as the claims in the Original Complaint and they all arise out of the same conduct and time period originally alleged.

48.    The Court should award costs and attorney's fees to Plaintiffs because Defendant lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704 (2005).  Defendant's Notice of Removal is untimely, it ignores controlling law, and it is based upon false statements.

15

WHEREFORE, the Court should remand this action to state court and award fees and expenses to Plaintiffs.

                        Respectfully submitted,

                        BUSINESS PRO COMMUNICATIONS, INC. and
                        TUNICA PHARMACY, INC., individually and as the
                        representative of a class of similarly-situated persons

                        By: /s   Phillip A. Bock
                            One of their attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | Jordan M. Rudnick |
| ANDERSON + WANCA | BOCK & HATCH, LLC |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle St., Suite 1000 |
| Rolling Meadows, IL  60008 | Chicago, IL  60602 |
| Telephone:  847/368-1500 | Telephone:  312/658-5500 |

## **CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that, on April 2, 2008, he caused a copy of the foregoing Plaintiffs' Motion for Remand to be served by CM/ECF upon all counsel of record.

                                                               /s Phillip A. Bock