# LIST OF EXHIBITS

**Exhibit 1**    Defendant's Summary Judgment Motion

**Exhibit 2**    Defendant's Notice of Removal

**Exhibit 3**    TCPA Cases from Northern District of Illinois

**Exhibit 4**    *Kwiatkowski v. Templeton Growth Fund, Inc.*, 2005 U.S. Dist. LEXIS 41946 (S.D. Ill. 2005)

**Exhibit 5**    *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)

**Exhibit 6**    Plaintiff's Answers to Defendant's First Set of Interrogatories

# EXHIBIT 1

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| **BUSINESS PRO COMMUNICATIONS, INC.,**<br>**an Illinois Corporation, Individually,**<br>**and as the Representative of**<br>**a Class of Similarly-Situated Persons,** | )<br>)<br>)<br>)<br>) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04 L 1043** |
| | ) | |
| | ) | |
| **EXPRESS PRODUCTS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### DEFENDANT, EXPRESS PRODUCTS, INC.'S, MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**NOW COMES**, Defendant, EXPRESS PRODUCTS, INC., by and through its attorneys,

LaBARGE, CAMPBELL & LYON, LLC, and SMITH AMUNDSEN LLC, pursuant to 735

ILCS 5/2-1005 and Rule 2.04(A)(2) of the Circuit Court for the 19th Judicial District, provides

the following Memorandum of Law in Support of its Motion for Summary Judgment

**I.     THE FACTS OF THIS CASE DEMONSTRATE THAT PLAINTIFF CANNOT MAINTAIN ITS LAWSUIT AGAINST THIS DEFENDANT, AND EXPRESS PRODUCTS IS ENTITLED TO SUMMARY JUDGMENT.**

The undisputed facts of this case compel the granting of summary judgment for Express

Products, Inc. because: the defendant, a company that distributes wireless accessories, had

numerous, voluntary two-way communications with the plaintiff, a wholesaler of wireless

equipment, regarding products and services starting in 1998 through at least 2003, prior to the

sending of the subject faxes in 2004; these voluntary, two-way communications are documented

in business records, kept in the ordinary course of Defendant's business and produced in this

case; and, Plaintiff has no documentation or evidence that this relationship was not in place prior to the sending of the facsimiles at issue. Therefore, summary judgment for defendant with regard to Plaintiff's Class Action Complaint is proper.

As stated more fully in Defendant's Statement of Material Facts, the details of this case show numerous contacts between representatives of Express Products, a distributor and wholesaler of accessories for cellular or wireless phones, and Plaintiff, Business Pro,[1] a wireless supplier and wholesaler of wireless communications. (Def.'s Statement of Material Facts, ¶ 6, 25-27.) ***The subject faxes in this case pertain to cell phone accessories.*** (*Id.*, ¶ 29)(emphasis added.) Specifically with regard to Plaintiff businesses, Defendant documented numerous communications, such as:

A. On August 2, 2002, a sales representative at Express Products "talked to Shawn," who "seemed interested" and wanted the sales representative "to keep him informed of specials." (*See id.*, ¶¶ 11-12, 28.)

B. On September 3, 2002, the call log for Direct Communications indicates that Shawn requested a catalog from defendant's representative. (*Id.*)

C. On January 2, 2003, Express Products' business record for Direct Communications shows that in a phone conversation between defendant's representative and Shawn, Shawn had "said that he received all of [Express Products] info and specials…and he liked the samples…" (*Id.*)

D. Later in April and May 2003, Gary from Direct Communications had conversations with representatives of Express Products regarding specific brands of accessories in which his company is interested. (*Id.*)

The names recorded on these call logs include "Sean" or "Shawn" and "Gary" at the Plaintiff's businesses. (*Id.*, ¶ 31.) Direct Communications' owner has testified that the entity had an employee by the name of Gary Perret, who worked as a manager and then district

---

[1] Business Pro and Direct Communications shared a business address and were located in the same building, separated only by a partition. (Def.'s Statement of Material Facts, ¶ 26.) During the deposition of plaintiff's representative, he testified that Direct Communications was listed as the previous corporate name for Business Pro. (*Id.*) A transaction "turned Direct Communications into a new Business Pro." (*Id.*) In Express Products' records, the contact information for Business Pro and Direct Communications was the same. (*Id.*, ¶ 13.)

manager for this entity from 1995 through to 2004. (*Id.*, ¶ 32.) This same owner for Business

Pro testified that the Plaintiff had an employee named Shawn Hamm, a manager of inventory in

Business Pro's warehouse. (*Id.*, ¶ 33.) During the time period in which the subject faxes were

sent, Business Pro's warehouse employees, including Shawn Hamm, had access to the

warehouse fax machines. (*Id.*) In fact, while he worked at Business Pro, Shawn Hamm was the

person in the warehouse who would typically answer the phone in the warehouse. (*Id.*)

## II.  THE SUBJECT FACSIMILES RESULTED FROM PLAINTIFF'S PERMISSION AND IN AN ESTABLISHED BUSINESS RELATIONSHIP; THEREFORE, EXPRESS PRODUCTS DID NOT VIOLATE THE TCPA.

Summary judgment for Express Products with regard to plaintiff's TCPA claim is proper

for two reasons, either one of which—standing alone—would be sufficient grounds. First, this

case does not involve the transmission of an unsolicited facsimile. This case does not come

under the application of the TCPA because the undisputed facts show that the information sent

by facsimile was not unsolicited—representatives of plaintiff-company consented to and even

***requested*** the transmitted information. Second, there was an established business relationship

between the defendant and the plaintiff prior to the purported, subject faxing, and this

relationship is an exception to the application of the TCPA. In other words, the subject faxes fall

outside the limits of the TCPA and summary judgment for defendant is proper.

### A.  THE TCPA DOES NOT APPLY IF THE FAX IS NOT UNSOLICITED AS IS THE CASE BETWEEN THE PLAINTIFF AND DEFENDANT IN THIS MATTER.

The TCPA does not prohibit all fax advertising. *See* 47 U.S.C. § 227(b)(1)(C); *see also*

June 19, 2007 Mem. Op. & Order at 1-6, attached to Defendant's Statement of Material Facts as

Exhibit C. The TCPA makes it "unlawful for any person within the United States ... to use any

telephone facsimile machine, computer, or other device to send an ***unsolicited advertisement*** to a

telephone facsimile machine." *See* 47 U.S.C. § 227(b)(1)(C)(emphasis added.) In other words,

the specific prohibition is against a fax transmission of an unsolicited advertisement. The term "unsolicited advertisement" means material advertising the commercial availability or quality of any property, goods, or services, transmitted to a person *without* that person's *prior invitation or permission*. *See* 47 U.S.C. § 227(a)(4)(2004)(emphasis added.) Therefore, under the plain language of the statute, Business Pro does not have a TCPA claim as there is clear evidence that Business Pro consented to, permitted, or invited the subject facsimiles. Plaintiff's TCPA claim falls wholly outside the perimeters of the statute. When the statute's language is clear, the court must apply it as written. *Hamilton v. Indus. Comm'n*, 203 Ill.2d 250, 256, 785 N.E.2d 839 (2003). In this case, the plain language of the TCPA makes clear that a fax is in violation only when it has been sent "without ... prior express invitation or permission." 47 U.S.C. § 227(a)(4). Under this clear language, plaintiff does not have a TCPA claim.

Here, the information recorded on the business records of the Defendant—"call-logs"—make readily apparent that representatives of Plaintiff had consented to the facsimile transmittals. (*See* Def.'s Statement of Material Facts, ¶¶ 11-12.) Starting as early as 1998, representatives of Plaintiff's companies and representatives of Defendant's company—entities in the same business or trade—had phone conversations in which the plaintiff's representatives asked to be "informed of specials," to be called again "in 6 months," and to be notified when Express Products ran any specials. (*See id.*) As shown in the documented evidence, Express Products: made periodic phone calls to Business Pro or its associated company, Direct Communications; spoke with representatives of the company; informed them of specials the company provided and equipment the company supplied; received requests for information on specials and products from plaintiff; and, then, forwarded this information as requested. (*See id.*)

4

Plainly, given Defendant's business documents, alone, the subject fax transmittals were solicited by plaintiff via its representatives' verbal consent.

**B.    THE RELATIONSHIP BETWEEN PLAINTIFF AND DEFENDANT FELL INTO AN EXCEPTION TO THE TCPA, AS THERE WAS AN ESTABLISHED BUSINESS RELATIONSHIP BETWEEN THE TWO BEFORE THE SENDING OF THE FAXES.**

Beyond the fact that this case does not fall within the specific terms of the TCPA, this case does not come within the purview of the TCPA because the contacts and communications between plaintiff and defendant gave rise to a relationship that is an exception to the TCPA. In interpreting application of the TCPA, the Federal Communications Commission ("FCC") has carved out an exception to the rule, finding that express permission is deemed given by fax recipients that have an "established business relationship" with the sender, and this relationship serves as an "exception to the TCPA provision forbidding fax advertising." *See* June 19, 2007 Mem. Op. & Order at 1; *see also Carnett's Inc. v. Hammond*, 279 Ga. 125, 127, 610 S.E.2d 529 (Ga. 2005). The EBR has always served as an exception to the TCPA, and it applies to pre-2005 TCPA cases. *See* June 19, 2007 Mem. Op. & Order at 2.

In regard to this exception to the rule, the FCC has provided greater clarity as to what an EBR is, how it is created, and how it is terminated. 71 Fed. Reg. 25,967. The EBR is defined as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

71 Fed. Reg. at 25,968-69. The FCC has stated that it "would be permissible for the recipient to provide to the sender its facsimile number orally over the telephone" and in "circumstances such as [this], the Commission concludes that the consumer has provided the facsimile number in the context of an established business relationship with the fax sender." *Id.* at 25,968. This

5

relationship is—and always has been—an "exemption from the prohibition on sending unsolicited facsimile advertisements." *Id.* at 25,967.

The FCC has further considered the issue of when an EBR is terminated, noting that the EBR exception, which has been in effect since January 1, 2003, "did not include any time limitations." *Id.* at 25,968. To remedy this, the FCC explained that once an EBR is established, it: "will permit an entity to send facsimile advertisements to a business or residential subscriber until *the subscriber 'terminates' it by making a request not to receive future faxes*." *Id.* at 25,969 (emphasis added.) In clarifying how the EBR applied to prior cases, the FCC explained: "if the EBR was in existence prior to July 9, 2005, and the sender also possessed the facsimile number before July 9, 2005, the sender may send facsimile advertisements to that recipient without demonstrating how the number was obtained." *Id.* at 25,968.

The FCC has explained that providing a "facsimile number to a business or other entity reflects a willingness to receive faxes from that entity." *Id.*

### C.   PLAINTIFF AND DEFENDANT HAD AN EBR PRIOR TO THE SUBJECT FAXES PURPORTEDLY BEING SENT, SUCH THAT THE TCPA CLAIM FAILS.

By previous phone conversations or "voluntary two-way communications," documented in Defendant's business records and produced as exhibits in this case, Business Pro's representatives consented to transmission of the subject faxes and had voluntarily entered into an established business relationship with Express Products.  Plaintiff engaged in phone conversations with Defendant, disclosed its contact information, including its fax number, and requested information from Defendant; thereby, Plaintiff expressed a desire to have information faxed. After the establishment of the EBR, the consent for faxing information from Express Products to Business Pro was never withdrawn or discontinued by Plaintiff.  In this context, Express Products reasonably forwarded the subject faxes and not in violation of the TCPA.

Here, Defendant, Express Products, did not use its facsimile machine or any other device to send an advertisement to Business Pro to which Business Pro did not consent. Instead, Express Products sent three faxes regarding cell phone accessories to Business Pro—a company that sells cell phone accessories—only after Express Products had voluntary phone conversations with Business Pro or Direct Communications' representatives, which contacts were recorded on business records for Express Products. (Def.'s Statement of Material Facts, ¶¶ 8-12, 21, 23.) Beyond the business documents that make this evident, the sworn testimony of this case includes Express Products' policy that a sales person would only obtain a customer's fax number when the customer asked to be faxed. (*Id.*, ¶¶ 8, 14-16.) Once Express Products began promoting weekly specials, it maintained this policy that only if the customer expressed interest and requested the weekly broadcast would a customer's fax information be procured and inputted into the listing of potential recipients. (*Id.*, ¶17.)

Though Express Products need not demonstrate or document the existence of an EBR for this case—as this relationship arose in 2004—the defendant ***does have*** documentary evidence that makes plain the development of this relationship. *See* 71 Fed. Reg. at 25968. As shown by discovery, an EBR arose via requests by a representative of Business Pro/Direct Communications for information on the weekly specials faxed by Express Products. (*See e.g.*, Def.'s Statement of Material Facts, ¶¶ 11-12, 18.) There are notations showing contacts between defendant's employees and plaintiff's employees, such as on August 2, 2002, wherein a sales representative at Express Products "talked to Shawn," who "seemed interested" and wanted Defendant "***to keep him informed of specials***." (*See id.*, ¶¶ 11-12, 28)(emphasis added.) One month later, on September 3, 2002, the call log for Direct Communications indicates that Shawn requested a catalog from defendant. (*Id.*) As of January 2, 2003, Express Products' records

7

show that in a phone conversation between defendant's representative and Shawn, Shawn had "said that he received all of [Express Products] info and specials." (*Id.*) Later in 2003, Gary from Direct Communications continues this relationship explaining the specific brands of accessories in which his company is interested. (*Id.*)

In other words, the only evidence before this court shows that representatives of plaintiff, Business Pro, had numerous phone conversations with sales persons at defendant, Express Products, requesting weekly specials, catalogs, and brand specific information prior to the subject faxes being sent. The exhibits, attached to Defendant's Statement of Material Facts, show business records of these phone conversations. The Plaintiff's representative has recognized that Shawn Hamm and Gary Perret, two of its employees, had access to company fax machines and telephones, and these names are included throughout defendant's business records. (Def.'s Statement of Material Facts, ¶¶11-12, 32-35.). Plaintiff's representative has even testified that he believes that the address line or "header"—indicating, "Shawn—Business Pro Communications"—was on the subject faxes because Express Products had called in to Business Pro to get a name and number. (*Id.*, ¶ 35.)

Furthermore, in contrast to Defendant's production of documents and testimony in this case, Plaintiff, Business Pro, has provided no evidence that its employees did not have these conversations, did not have the access to the company's phone and fax, and did not make these requests for information. Additionally, Plaintiff has provided no evidence that it asked that any faxing cease.[2] Since this relationship was established prior to July 9, 2005, there is a presupposition that if an EBR existed, the "sender had the facsimile number prior to that date as well." 71 Fed. Reg. at 25,968. Thereby, the burden is on Business Pro to demonstrate that this

---

[2] Under the FCC's regulations, in order to end an EBR, the recipient must request that it no longer receive future facsimiles. 71 Fed. Reg. at 25,969.

relationship and consent documented by Express Products did not exist. 71 Fed. Reg. at 25,969.

Given these voluntary, two-way conversations an EBR arose, which was never terminated, such that this case serves as an exception to the TCPA, and summary judgment for Express Products is proper.

## III.  THE FACTS OF THIS CASE SHOW THAT PLAINTIFF CANNOT STATE A CONVERSION CLAIM IN THIS MATTER.

Business Pro's claim of conversion is similarly barred because this case involves an established business relationship or an invitation for faxed documents to be received by the plaintiff—not an act "of control, dominion or ownership" over the plaintiff's property. *Colonial Funding, L.L.C. v. Am. Empire Surplus Lines Ins. Co.*, 308 Ill. App. 3d 376, 378, 719 N.E.2d 1098 (1st Dist. 1999)(citing *Roderick Dev. Inv. Co. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052, 668 N.E.2d 1129 (1st Dist. 1996)). The "essence" of conversion is the wrongful deprivation of one who has a right to immediate possession of the object unlawfully held. *Id.* For conversion, a plaintiff must show: 1) an unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over plaintiff's property; 2) plaintiff's right in the property; 3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and, 4) a demand for possession of the property. *Id.* (citing *Roderick Dev. Inv. Co.* and *Fonda v. Gen. Cas. Co.*, 279 Ill. App. 3d 894, 665 N.E.2d 439 (1996)). The tort of conversion was intended to remedy the complete destruction of tangible property, not other injuries, and certainly not solicited or invited fax transmissions. *See In re Starlink Corn Products Liability Litigation*, 212 F. Supp. 828, 844 (N.D. Ill. 2002).

It cannot be correct that mere receipt and printing of a requested fax transmission, which the plaintiff invited from the defendant, constitutes the type of control or dominion over property contemplated by the tort of conversion. By virtue of the plaintiff's two-way conversations with

defendant, in which plaintiff's fax number was disclosed and via which defendant forwarded requested faxes, Business Pro authorized the use of its fax machine. Therefore, plaintiff cannot even show the first requirement of "***unauthorized*** and ***wrongful***" control, dominion, or ownership by defendant over plaintiff's property. *Colonial Funding, L.L.C.*, 308 Ill. App. 3d at 378 (emphasis added.) By engaging in phone conversations with Defendant during which plaintiff's representatives provided the company's fax information, plaintiff relinquished "absolute" and "unconditional" rights to its fax machine. *Id.* In other words, summary judgment for defendant is proper because there has been no taking or complete destruction of tangible property by Express Product's sending of three, one-page facsimiles at the plaintiff's request. *See In re Starlink Corn Products Liab. Litig.*, 212 F. Supp. at 844.

## IV.    COUNT III OF THE COMPLAINT, "STATUTORY UNFAIR PRACTICE," SHOULD BE STRICKEN OR SUMMARILY DISMISSED.

To plead and prove a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2)("ICFA"), Plaintiff must plead with specificity and prove: (1) a deceptive act or practice by the defendant; (2) defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and, (4) actual damage to the plaintiff (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190-91, 835 N.E.2d 801 (Ill. 2005). Nowhere does Plaintiff make the requisite pleading for such a claim. Therefore, this claim should be summarily dismissed.

Even if this Honorable Court *sua sponte* construed Count III as an ICFA claim, summary judgment for defendant would be proper on this Count. Plaintiff's claim under ICFA is barred because the "act" at issue was not an intended deception or unfair practice but, instead, a sending of facsimiles to Plaintiff after its representatives disclosed this information for the faxing of product

10

information by Express Products. Plaintiff has no cause of action under ICFA because "the Act is not intended to be used as a vehicle for transforming nondeceptive and nonfraudulent...omissions into actionable ones," which is exactly what would happen if Plaintiff's ICFA claim stands. *Kellerman v. Mar-Rue Realty & Builders, Inc.*, 132 Ill. App. 3d 300, 306, 476 N.E.2d 1259 (1985).

Given the law and the application of ICFA to these undisputed facts, Plaintiff's claim—if perceived as one under ICFA—does not satisfy the burden of proof under the ICFA. First, plaintiff cannot show that defendant engaged in a deceptive act or unfair practice. For Express Products' conduct to be considered "unfair," the company's action in this case would have to be: (1) violative of public policy; (2) immoral, unethical, oppressive, or unscrupulous; and, (3) substantially injurious of the plaintiff. *Robinson v. Toyota Motor Credit*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951 (2002). To show that Express Products' sending of requested information was "unfair" under ICFA, Plaintiff must show that the transmission meets one of these criteria or, to a lesser extent, all three. In this case, Plaintiff's receipt and printing of one-page facsimiles—which it had requested—is not an unfair practice that equates to the "oppressiveness" needed to show "unfairness" under ICFA. *See Robinson*, 201 Ill. 2d at 419-20.

Similarly, Express Products' conduct cannot be considered "deceptive" because there is no evidence of the "use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" as required by the ICFA. *See*, 815 ILCS 505/2. Defendant's forwarding facsimile information only after a request for these materials does not fall within the perimeters of fraud, false pretense, misrepresentation or concealment contemplated by the ICFA.

Second, Plaintiff cannot show a deceptive act "during a course of conduct involving trade or commerce." *See Robinson*, 201 Ill. 2d at 417. If anything, the transmission requested by the

11

Plaintiff's representatives was a minimal intrusion into Plaintiff's use of time and a negligible use of Plaintiff's paper and toner. Defendant transmitted the subject facsimiles in the context of documented correspondence with Plaintiff for information about products provided by Express Products. Such transmissions are not an "oppression" required to bring a case under ICFA.

Finally, there is no actual damage to the plaintiff proximately caused by any deception. *Avery*, 216 Ill. 2d at 191. Proximate causation is an element of all private causes of action under the ICFA, such that the plaintiff must establish that it was deceived by representations or omissions. *Id.* at 192-93. Similarly, Plaintiff has not sustained a substantial injury as contemplated by ICFA. To the contrary, Plaintiff's request for faxed information is not a significant loss of use of its facsimile machine or lost profits due to business disruption.

Plaintiff cannot maintain its claim that its receipt of facsimiles, received only after Plaintiff provided its fax number to the sender, rises to the required level of oppressiveness under ICFA; therefore, summary judgment for Express Products on the ICFA claim is proper.

**WHEREFORE**, Defendant, Express Products, Inc., prays that this Honorable Court enter an order 1) granting summary judgment in its favor and denying any and all claims against it arising out of this lawsuit; and 2) finding, pursuant to Supreme Court Rule 304(a), that there is no reason for delay of the enforcement or appeal of its order.

Respectfully submitted,

LaBARGE, CAMPBELL & LYON, LLC
SMITH AMUNDSEN LLC


One of the Attorneys for Defendant,
EXPRESS PRODUCTS, INC.

12

Attorneys for Defendant
EXPRESS PRODUCTS, INC.
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601
(312) 894-3200
Attorney I. D. No. 13757

# EXHIBIT 2

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BUSINESS PRO COMMUNICATIONS, INC., an Illinois corporation and TUNICA PHARMACY, Inc., individually and as the representatives of a Class of Similarly-Situated Persons,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS PRODUCTS, INC.<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

**FILED**

**MARCH 5, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Judge:

**PH**

Case No.: **08 C 1323**

**JUDGE ST. EVE**
**MAGISTRATE JUDGE VALDEZ**

---

### NOTICE OF REMOVAL TO FEDERAL COURT
### BASED ON DIVERSITY JURISDICTION

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant, EXPRESS PRODUCTS, INC., by and through its attorneys, Kevin Campbell of LaBARGE, CAMPBELL & LYON, LLC and Eric L. Samore and Molly A. Arranz of SMITHAMUNDSEN LLC, hereby submits this Notice of Removal to the United States District Court for the Northern District of Illinois, Eastern Division, of the above-styled action, pending in the Circuit Court of Lake County, Illinois, as Case No. 04 L 1043. In support of this petition and as grounds for removal, Express Products, Inc. ("Express Products") states as follows:

**I.   FACTUAL BACKGROUND.**

Plaintiff originally filed an action styled *Business Pro Communications, Inc. v. Express Products, Inc.*, Civil Action File No. 04 L 1043, in the Lake County Circuit Court on December 30, 2004. (Pl.'s Compl. attached hereto as **Exhibit A.**) The Complaint ("Original Complaint") was brought by one Plaintiff, Business Pro Communications, Inc. ("Business Pro"), a Lake County, Illinois, corporation against Defendant, Express Products, Inc. ("Express Products"), a

Pennsylvania corporation. (Compl., ¶¶ 9-10.) Plaintiff alleged jurisdiction and venue was proper in Illinois because, purportedly, "Defendant has transacted business in Illinois" and the "business activities" at issue involved "Illinois residents and Illinois fax machines." (Id., ¶ 6.)

The crux of the Original Complaint was that Defendant had sent "three unsolicited advertisements to Plaintiff's facsimile machine" in Illinois in 2004, which violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. Section 227. (Id., ¶¶ 2, 11.) Plaintiff attached the three, subject facsimiles to the Original Complaint. (Id.) Plaintiff also alleged two other counts: "Common Law Conversion" and "Statutory Unfair Practice." (Id. at 7, 10.) Nowhere in the Original Complaint did Business Pro lay out the elements for a claim under ICFA; nowhere in the Original Complaint did Plaintiff request injunctive relief.

Thereafter, this case proceeded between Business Pro and Express Products, only. There has been no class certification. When written and oral fact discovery was at its close, on July 5, 2007, Defendant filed a summary judgment motion based upon at least two bases for why Defendant was entitled to judgment as a matter of law[1].

On February 7, 2008, Plaintiff moved for leave to file its First Amended Complaint ("Amended Complaint") and its Amended Motion for Class Certification and To Add an Additional Party Plaintiff. (Pl.'s Motion, with the 1st Am. Compl. and Am. Mot. for Class Certification, attached hereto as **Exhibit B**.) The Amended Complaint adds a new Plaintiff, Tunica Pharmacy ("Tunica"), located in Mississippi. Express Products remained the sole defendant. Plaintiff avers that jurisdiction and venue are proper because "Defendant has

---

[1] The Court ordered a briefing schedule and hearing for this Motion. However, Plaintiff never filed a Response and no hearing was held. Instead, within a few days after Express Products filed its Summary Judgment Motion, Plaintiff's counsel sent out "Advertising Material" to certain entities identified by Defendant in discovery. This correspondence stated: "We are trying to recover compensation for the targets of Express Products junk fax campaign and also attempting to stop future junk faxes. We have determined that you are likely to be a member of the class. You might not remember receiving junk faxes from Express Products, but if the lawsuit is successful, you would receive compensation (up to $1,500) for each junk fax Express Products sent." (Attached hereto as **Exhibit C**.) Via this "Advertising Material," Plaintiff's counsel located another entity, Tunica Pharmacy.

transacted business and committed tortious acts" generally, some of which occurred in Illinois.

(Am. Compl., ¶¶ 6-7.) Plaintiff now alleges that Defendant "faxed more than 80 advertisements"

to Business Pro and approximately thirty advertisements to Tunica in Mississippi. (*Id.*, ¶¶ 11-

12.) Plaintiffs attach copies of "some" of the facsimiles at issue between Defendant and

Business Pro (Exhibit A) and the separate facsimiles at issue between Tunica and Defendant

(Exhibit B). (*Id.*) Besides alleging a TCPA violation and conversion, Plaintiff now alleges a

violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and seeks attorneys'

fees. (*See id.* at 10.) Plaintiff also seeks injunctive relief in Count I and Count III. (*Id.* at 7, 12.)

The Honorable Judge Schostok granted Plaintiff's Motion for Leave to Amend and Add

*instanter* at the February 7, 2008 hearing. (Order attached hereto as **Exhibit D**.)

## II.    REMOVAL OF THIS ACTION TO FEDERAL COURT IS PROPER.

This Honorable Court has original jurisdiction over this action because it is now an action

wherein the amount in controversy exceeds $75,000 and there is diversity of citizenship. 28

U.S.C. §§ 1332. In addition, original jurisdiction over this matter is proper pursuant to 28 U.S.C.

§§ 1332(d). In other words, this Honorable Court can exercise original jurisdiction over this

matter pursuant to 28 U.S.C. Section 1332(a) through (d) because either conventional diversity

jurisdiction or the provisions for diversity jurisdiction by CAFA form an appropriate basis for

removal under 28 U.S.C. Sections 1441 and 1446.

Section 28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within
> thirty days after the receipt by the defendant, through service or otherwise, of
> a copy of the initial pleading setting forth the claim for relief upon which
> such action or proceeding is based…
>
> If the case stated by the initial pleading is not removable, a notice of removal
> may be filed within thirty days after receipt by the defendant…of a copy of an
> amended pleading…from which it may first be ascertained that the case is
> one which is or has become removable, except that a case may not be

> removed on the basis of jurisdiction conferred by section 1332 of this title
> more than 1 year after commencement of the action.

Here, this case is removable to federal court because this Court has original jurisdiction over the Amended Complaint, which now includes averments showing not only diversity of citizenship by an amount in controversy in excess of the jurisdictional amount. First, pursuant to conventional diversity class action rules, enumerated in Section 1332(a), the Court has original jurisdiction over this matter and it is removable because there is complete diversity and the matter in controversy between one plaintiff and defendant exceeds $75,000. Second, pursuant to Section 1332(d), put in place via the enactment of the Class Action Fairness Act of 2005 ("CAFA"), original jurisdiction with the federal court is proper and removal is appropriate because more than 100 class members are at issue, at least one class member is diverse from the defendant, and more than $5 million is in controversy. Therefore, on either one of these grounds, removal of this action is proper.

**A.    This Honorable Court Has Original Jurisdiction Over This Matter Pursuant To 28 U.S.C. § 1332(a).**

Section 1332(a) states:

> The district courts shall have original jurisdiction of all civil actions where
> the matter in controversy exceeds the sum or value of $75,000, exclusive of
> interest and costs, and is between—citizens of different States.

This clear language of Section 1332(a) was not displaced by the enactment of CAFA; instead, CAFA augments these "rules." One way in which original jurisdiction under 1332 was expanded is via the addition of 28 U.S.C. § 1453, added to erase the one-year limit for removal of class actions pursuant to Section 1332. Specifically, Section 1453 explains: a "class action may be removed to a district court of the United States in accordance with section 1446 (*except that the 1-year limitation under section 1446(b) shall not apply*)..." 28 U.S.C. § 1453(b)(2005)(emphasis added.)

Plaintiffs bring this case as a class action, in accordance with 735 ILCS 5/2-801, and it is removable under the conventional tenets of Section 1332(a). First, based upon the Amended Complaint and information and belief, Plaintiff, Business Pro, is a citizen of the State of Illinois, and Plaintiff, Tunica, is a citizen of the State of Mississippi. (*See* Am. Compl., ¶ 9.) Defendant, Express Products, is a corporation duly organized and incorporated in the State of Pennsylvania. (*See id.*, ¶ 10.) Express Products' principal place of business and headquarters are in the State of Pennsylvania. Therefore, at all pertinent times, Express Products is and has been a citizen of the State of Pennsylvania. There is complete diversity between the Plaintiffs, citizens of Illinois or Mississippi, and Defendant, a citizen of Pennsylvania.

Second, the amount in controversy exceeds $75,000, exclusive of interest and costs. While Express Products contests the merits of the Amended Complaint, the alleged damages sought by the individual plaintiff, Business Pro, are significant and purportedly in excess of $75,000. Plaintiff claims to have received eighty facsimile transmissions from the Defendant in violation of the TCPA. (Am. Compl., ¶ 11.) Plaintiff seeks statutory damages for these claimed violations, averring that it is entitled to $500 per violation or *treble* the amount—as allowed under the TCPA—equaling $1500 per violation. (*See id.*, ¶ 24.) Therefore, the amount in controversy between one of the Plaintiffs, Business Pro, and the Defendant, Express Products, is at least $120,000. This amount shows what "the stakes of the litigation *could be*" and "what they *are* given the plaintiff's actual demands." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)(emphasis in original.) A "judge may well award less than $1,500 per fax, but a recovery exceeding [the statutory amount]…is not 'legally impossible.'" *Id.*

In addition, Plaintiff seeks relief under ICFA, requesting attorneys' fees, litigation expenses, and costs of the suit under ICFA. (Am. Compl. at 12.) This case has been pending

since December 2004, and discovery has been extensive, with Plaintiff taking depositions out-of-state including the depositions of four representatives of Express Products in Pennsylvania. Therefore, the attorneys' fees, alone, could well exceed $75,000.

**B.** **This Honorable Court Has Original Jurisdiction Over This Matter Pursuant To 28 U.S.C. § 1332(d).**

Due to the amendments of 2005 to the provisions of diversity jurisdiction, expanded by CAFA and incorporated into 28 U.S.C. § 1332(d), this Court has original jurisdiction and this matter is removable. In particular:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which…any member of a class of plaintiffs is a citizen of a State different from any defendant…

This case fits within the parameters of this subsection and—via the Amended Complaint—is now removable because this Notice of Removal is filed within thirty days after receipt by the Defendant of an amended pleading from which it is first ascertained that the case has become removable. *See* 28 U.S.C. § 1446(b).

1. <u>The Minimal Diversity Requirements And Amount In Controversy Requirements Of Section 1332(d) Are Met.</u>

First, this is a civil action filed under Section 2-801 of the Illinois Code of Civil Procedure, where one or more members of the putative class are citizens of states different from Express Products and the amount in controversy satisfies the jurisdictional amount established by 28 U.S.C. Section 1332(d). 28 U.S.C. § 1332(d)(1)(B).

Second, minimal diversity is found. Plaintiffs aver a class action in which both the named plaintiffs are citizens of different States than the named Defendant. (*See* Am. Compl., ¶¶ 9-10.) It is also apparent that most, if not all, of the members of the putative class are citizens of Illinois, Mississippi, or the other forty-seven states besides Pennsylvania, such that the diversity

of citizenship requirement of 28 U.S.C. § 1332(d)(2) and (7) is met. Jurisdiction is mandatory, not discretionary, because the only defendant is not a citizen of the state where the Amended Complaint was originally filed, Illinois. In other words, this is *not* a case where the Court must decline or "in the interests of justice" may decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3-4).

Third, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The evidence that the amount exceeds this jurisdictional amount can be found in the allegations of the Amended Complaint. Plaintiffs aver that the Defendant violated the TCPA by faxing "more than 80 advertisements" to Business Pro during the time period of February 27, 2002 through October 5, 2004. (Am. Compl., ¶ 11.) Then, Plaintiffs allege that Tunica received faxed advertisements on various dates spanning from January 15, 2004 through October 12, 2004. (Am. Compl., ¶ 12.) Plaintiffs do not specify the specific dates in 2004 when both Business Pro and Tunica received the same faxes; however, some of the faxes which Tunica claims to have received preceded and post-dated the advertisements Business Pro claims to have received, with Tunica receiving faxed advertisements on January 15, 21, 29, February 14, 19, and October 7 and 12, 2004. (Am. Compl., ¶ 12.) In addition, with regard to the class, Plaintiffs claim that "Defendant faxed the *same* and similar advertisements to Plaintiffs *and more than 38 other recipients*" to aver that 39 other recipients received the same 80 faxes Business Pro received from 2002 through 2004 and 39 other recipients received the same seven additional faxes that Tunica purportedly received but Business Pro did not. (Am. Compl., ¶ 14.) The amount sought by the class members for each unsolicited facsimile sent in violation of the TCPA is potentially $1500 per fax violation, such that the aggregate amount in controversy is at least $5,220,000.

This calculation also shows that more than 100 persons or entities comprise the putative class[2]. Defendant has a good faith belief that the amount in controversy, therefore, exceeds the jurisdictional amount.

As the Amended Complaint now states a claim over which the federal courts have original jurisdiction pursuant to Section 1332(d), removal of this matter is appropriate.

2.    A New Controversy Has Arisen Via The Amended Complaint; Therefore, Removal Of This New Cause Of Action Is Proper.

For this case to be removed from state to federal court pursuant to the federal court's original jurisdiction under Section 1332(d), added via enactment of CAFA, the Amended Complaint must have commenced a new action. A putative class action commenced after February 18, 2005 may be removed to the appropriate United States District Court provided that the Amended Complaint commences a new class action.

An amendment is considered "distinct from the original pleading and does not relate back where (1) the original and amended set of facts are separated by a significant lapse of time, or (2) the two sets of facts are different in character…, or (3) the two sets of facts lead to arguably different injuries." *Porter v. Decatur Mem'l Hosp.*, Case No. 104441, 2008 Ill. LEXIS 10, *23 (Jan. 25, 2008 Ill.)(citing *In re Olympia Brewing Co. Sec. Litig.*, 612 F. Supp. 1370, 1372 (N.D. Ill. 1985)). New facts will relate back if there is a "sufficiently close relationship" between the original and new claims—which must be found in the "temporal proximity," in the "general character of the sets of factual allegations" and where "the facts are all part of the events leading up to the originally alleged injury." *Id.* A new contention arises when the allegations regarding events are not close in time or subject matter or do not lead to the same injury. *See id.* at *25

---

[2] Further, on one date where Plaintiff, Business Pro, claims to have received an unsolicited fax, February 27, 2002, there is information regarding attempted transmissions of facsimiles to 2,258 potential recipients on behalf of Express Products. (Dan Geiger Dep. at 101, attached hereto as **Exhibit E.**) According to Plaintiffs' averments, this subset constitutes part of the putative class, each of whom could recover $1500 for this one transmission.

(finding the new claims did relate back because they were part of the same events leading up to "the same ultimate injury" and "were closely connected in both time and location.") The Court should consider whether "the original pleading furnish[ed] the defendant with notice of the events that underlie the new contention." *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 757 (7th Cir. 2006).

Here, the Amended Complaint is distinct from the original pleading because: (1) there is a significant lapse of time separating the original and amended set of facts; (2) the two sets of facts lead to different injuries; and/or (3) the two sets of facts are different in character. *See Porter*, 2008 Ill. LEXIS at *23. Under the test articulated in *Porter*, the Amended Complaint need only meet one of these factors to show a new contention is averred; however, here, the Amended Complaint contains new claims as demonstrated by analysis under all three prongs. Specifically, there is a significant lapse of time between the amended facts and the original facts because Business Pro now claims to have received faxes two years earlier than the original facts at issue; there are different injuries alleged because of the increased statutory demand for damages and the new remedies sought in injunctive relief and pursuant to ICFA; and, the two sets of facts are different in character because each new fax averred requires a separate and unique analysis under the TCPA.

        a.    Plaintiff Has Alleged New Claims As Shown By The Significant Length Of Time Between The Originally Stated Claims And Amended Claims.

Plainly, the amended allegations regarding the alleged wrongdoing to Business Pro are "distinct from the original pleading" and do not relate back because "the original and amended set of facts are separated by a significant lapse of time." *Porter*, 2008 Ill. LEXIS 10 at *23. Business Pro now claims to have received eighty transmissions via fax instead of three

transmissions. These seventy-seven additional faxes alleged took place starting two years prior to the previously claimed injury. These are wholly new allegations because of the lack of "temporal proximity." *See Porter*, 2008 Ill. LEXIS 10 at *23. Plaintiffs attempt to expand the span of time ten-fold by averring that instead of merely three faxes, from July-August 2004, seventy-seven other faxes were transmitted from February 27, 2002 through October 5, 2004. (Am. Compl., ¶ 11.) Via the Amended Complaint, the temporal analysis at issue has expanded from two months to approximately 32 months. Therefore, under the *Porter* test, these allegations "show that the events alleged" are not "close in time," which alone can demonstrate new claims are pled. *See* 2008 Ill. LEXIS 10 at *25.

> b.    Plaintiff Has Alleged New Claims As Shown By The Two Sets Of Facts That Lead To Different Injuries.

The TCPA, the principal statute at issue in this matter, makes it "unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Under the federal statute, the term "unsolicited advertisement" means material advertising the commercial availability or quality of any property, goods, or services, transmitted to a person without that person's prior invitation or permission. *See* 47 U.S.C. § 227(a)(4). For each time there is a transmission of an unsolicited advertisement to a facsimile machine, the injured party is entitled to statutory damages of $500 or $1500 "if the violation was knowing." (*See* Am. Compl., ¶ 24.)

Here, given the applicability of this federal statute and the damages recoverable for each and every transmission, the set of facts in the Original Complaint and the set of facts in the Amended Complaint lead to different and distinct injuries at issue. *Porter*, 2008 Ill. LEXIS 10 at *23. That new and separate injuries have been pled is apparent because for each subject fax, the

Court will need to analyze: whether a facsimile transmission originated with the Defendant and was sent to the Plaintiff's facsimile machine; and, whether such transmission was "unsolicited," i.e., whether the Defendant had prior invitation or permission for this sending. This analysis will also require determination of whether Express Products had permission for faxing by an established business relationship and, if so, whether that relationship had been revoked prior to any alleged transmissions. All of this analysis will be required for each and every fax to determine whether an injury deserving of $500-$1500 has occurred. This assessment will be needed for each putative class member. In the end, the damages sought, now, could be 25-times the amount available under the Original Complaint, such that the potential exposure of the Defendant to one Plaintiff has increased from $4,500 to $112,500. The facts of the Original Complaint and the facts of the Amended Complaint do not—together—lead to one, global injury; instead, each claimed fax transmission will lead to its own separate analysis of injury under the statutory framework of the TCPA.

Furthermore, now, for the first time, Plaintiffs seek injunctive relief in Counts I and III, whereby they request an equitable remedy about which Defendant had not previously been notified. Plaintiffs also specifically allege an ICFA claim, not pled in the Original Complaint, which puts forth new claims with new legal analysis of whether such a claim is maintainable given the factual contentions. Therefore, the Amended Complaint posits new injuries to be assessed and, thereby, includes different claims at issue.

        c.    New Claims Have Been Initiated Because The New Facts Are Different In Character Than The Original Facts.

Beyond the fact that each additional averment of a TCPA violation commences a new claim of injuries, the factual averments of the Amended Complaint are different in character than the originally-stated, factual allegations. Given the individualized analysis of facts required

under the TCPA, the Amended Complaint states new claims because there is not a close relationship between the "general character of the sets of factual allegations." *Porter*, 2008 Ill. LEXIS 10 at *23.

As stated *supra*, for each subject fax, the Court will need to analyze the specific facts preceding and surrounding each alleged transmission. Each set of facts could be different in character because a factual determination will need to be made as to whether a facsimile transmission occurred and whether the Defendant had prior invitation or permission or an established business relationship with the Plaintiff, which had not been revoked at the time of the transmission. That "two sets of facts different in character" are at issue is further exemplified by the Amended Complaint adding separate and new injuries for a resident of the State of Mississippi. This Plaintiff, Tunica, was not part of the Original Complaint nor contemplated by the averments in the Original Complaint, which pled that "Defendant has transacted business in *Illinois*" and that the "business activities" at issue involved "*Illinois* residents and *Illinois* fax machines." (Compl., ¶ 6)(emphasis added.) The faxes Tunica claims violated the TCPA were not part of the facsimiles at issue in the Original Complaint. Plaintiffs allege that Tunica received faxes from January to October 2004, but none of these faxes appended to the Amended Complaint are the same as the three faxes attached to the Original Complaint. (*Id.*, ¶ 12.)

In other words, by the Amended Complaint, there are "novel claim[s] tacked on to an existing case, [which] commences new litigation." *Knudsen*, 435 F.3d at 758. Like the Defendant in *Knudsen*, Express Products is faced with new claims for relief about which defendant was not furnished notice via the Original Complaint. *Id.* at 757. Defendant has now been blindsided by a mammoth increase in its exposure to the named plaintiffs under the TCPA. Under the Original Complaint, Defendant had notice that it was potentially liable for claimed

transmissions of three facsimiles; now, after the close of discovery, Defendant is exposed to liability for 27 times the claimed transmissions about which it had no notice in the Original Complaint.

### III.    THE OTHER REQUIREMENTS OF THE REMOVAL STATUTE AND LOCAL RULES HAVE BEEN MET.

This Notice of Removal is timely and proper in accordance with 28 U.S.C. § 1446(b) because Defendant is filing this Notice of Removal within 30 days after service of (and filing of) the Amended Complaint, which occurred on February 7, 2008.    Venue lies in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1446(a), because the amended action was filed within this District and Division.    There are no other defendants named in this action, and Plaintiff has previously requested a trial by jury.

Submitted herewith and/or appended hereto is a copy of all process, pleadings, and orders from the state action. *See* 28 U.S.C. § 1446(a).

In accordance with 28 U.S.C. § 1446(d), promptly after or concurrently with the filing of this Notice of Removal, Defendant will provide written notice of this Notice of Removal to Plaintiff and will file a copy of this Notice of Removal with the Clerk of the Court of the Circuit Court of Lake County, Illinois.    By removing this action, Defendant does not waive any defenses available to it in responding to the Amended Complaint.

WHEREFORE, Defendant, EXPRESS PRODUCTS, INC., respectfully requests that this action be removed from the Circuit Court of Lake County to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Respectfully Submitted,

By: _____

Counsel for Defendant,
EXPRESS PRODUCTS, INC.

Kevin Campbell, ARDC # 0618398
LaBarge, Campbell & Lyon, LLC
200 W. Jackson Blvd.
Suite 2050
Chicago, IL  60606
Phone:  312-580-9010
Fax:  312-580-9011
Email:  KCampbell@LCLLAW.com

Eric L. Samore, ARDC # 6181345
Molly A. Arranz, ARDC # 6281122
SMITH AMUNDSEN, LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Phone: (312) 894-3200
Fax:    (312) 894-3210

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of March 2008, he served the Defendant, Express Products, Inc.'s **Notice of Removal to Federal Court Based on Federal Question Jurisdiction** and **Appearances** on:

Brian J. Wanca
Ryan M. Kelly
Anderson & Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008

Phillip A. Bock
Bock & Hatch LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL 60602

via first class mail by depositing same into an envelope properly sealed and with proper postage prepaid, into the U.S. Mail at 150 North Michigan, Chicago, Illinois before 5:00 p.m., on the 5th day of March, 2008.

[x]    Pursuant to 28 USC Section 1746(2),
I certify under penalty of perjury that
the foregoing is true and correct.
Executed on: March 5, 2008.

_____

Eric L. Samore, ARDC # 6181345
Molly A. Arranz, ARDC # 6281122
SMITH AMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
Counsel for Defendant,
EXPRESS PRODUCTS, INC.

# EXHIBIT 3

## STONECRAFTERS vs. CM SYSTEMS

## 03 C 50287

## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

## 2003 U.S. Dist. LEXIS 20092

### October 21, 2003, Decided

**DISPOSITION:**  [*1] Cause remanded to Circuit Court of McHenry County, Illinois and costs and attorney fees relating to removal denied.

**COUNSEL:** For Stonecrafters Inc, PLAINTIFF: Brian J Wanca, Anderson & Wanca, Rolling Meadows, IL USA.

For CM Systems Inc, DEFENDANT: Bruce W Lyon, Labarge, Campbell & Lyon, LLC, Chicago, IL USA.

**JUDGES:** Philip G. Reinhard.

**OPINION BY:** Philip G. Reinhard

**OPINION**

### MEMORANDUM OPINION AND ORDER

Plaintiff, Stonecrafters, Inc. ("Stonecrafters") originally filed a complaint in state court, individually and as the representative for a class of similarly-situated persons, against Defendant CM Systems, Inc. ("CM Systems"). Plaintiffs brought a three-count complaint: Count I claims a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; Count II is a common law claim for conversion; and Count III is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. On July 11, 2003, CM Systems filed a notice of removal pursuant to 28 U.S.C. § 1441, claiming the action presents a federal question pursuant to 28 U.S.C. § 1331. Before the Court is Plaintiff's Motion [*2] to Remand the case to state court for lack of federal question jurisdiction under 28 U.S.C. § 1331.

Removal from state court is permitted only if federal jurisdiction existed at the time of removal. Doe v. Allied-Signal, 985 F.2d 908, 911 (7th Cir. 1993). Federal courts are courts of only limited jurisdiction, See Sheldon v. Sill, 49 U.S. (8 How.) 441, 449, 12 L. Ed. 1147 (1850), and, as such, there is a general presumption against federal jurisdiction which the party seeking removal must rebut. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 128 L. Ed. 2d 391, 114 S. Ct. 1673 (1994).

Congress has imbued federal courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A suit will generally "arise under" the law that creates the plaintiff's cause of action. See Amer. Well Works v. Layne & Bowler Co., 241 U.S. 257, 260, 60 L. Ed. 987, 36 S. Ct. 585 (1916). Thus, if federal law creates a plaintiff's cause of action, § 1331 jurisdiction will generally be present. [*3] Murphey v. Lanier, 997 F.Supp 1348, 1349 (S.D. Cal. 1998). However, if federal law creates a cause of action there also must be a showing that § 1331 jurisdiction has not been preempted by a more specific statutory provision conferring jurisdiction elsewhere. Connors v. Amax Coal Co. Inc., 858 F.2d 1226, 1229-30 (7th Cir. 1988). "Federal-question jurisdiction necessarily depends upon an act of Congress and the corresponding intent of Congress for jurisdiction expressed by statute." Gold Seal Termite & Pest Control Co. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 11205, *8 (S.D. Ind. 2003) citing Int'l Sci. & Tech. Inst. v. Inacom Comm. Inc., 106 F.3d 1146, 1153-54 (4th Cir. 1997). Statutes which purport to confer federal jurisdiction are to be construed narrowly, with ambiguities resolved against a finding of fed-

eral jurisdiction. Erienet Inc. v. Velocity Net, Inc., 156 F.3d 513, 519 (3d Cir. 1998). Therefore, unless jurisdiction is unambiguously found through a statute which does not preempt § 1331 jurisdiction, there can be no federal question jurisdiction for this Court in this action.

The TCPA provides [*4] a private right of action which *may* be brought "in an appropriate court of that State." 47 U.S.C. § 227(b)(3). This jurisdictional grant by Congress is ambiguous in that, by using the word "may", it has seemingly left open the question as to whether one also *may not* bring a cause of action in state court, but rather, bring it in federal court under § 1331 jurisdiction. Of the courts which have addressed the issue, only one District Court has found this permissive statute to allow federal jurisdiction. Kenro, Inc. v. Fax Daily, Inc., 904 F. Supp 912 (S.D. Ind. 1995) *aff'd on rehearing by* 962 F. Supp 1162 (S.D. Ind. 1997). Six Circuit Courts, however, have come to the contrary conclusion. [1] The Circuits' reasoning has been twofold: (1) legislative intent which shows Congress did not mean to confer federal jurisdiction for actions under the TCPA, and (2) permissive grants of jurisdiction to courts of general jurisdiction cannot confer jurisdiction on unmentioned courts of limited jurisdiction where a specific jurisdictional grant is required. See e.g., Int'l Sci. Tech. Inst. v. Inacom Comm., 106 F.3d 1146, 1151-52 (4th Cir. 1997). [*5] See also Kevin N. Tharp, Federal Court Jurisdiction Over Private TCPA Claims: Why The Federal Courts of Appeal Got It Right, 52 Fed. Comm. L.J. 189 (1999). There is, therefore, no federal question jurisdiction for this action under the TCPA.

[1]    Murphey v. Lanier, 204 F.3d 911 (9th Cir. 2000); Nicholson v. Hooters of Augusta, 136 F.3d 1287 (11th Cir. 1998); Foxhall Realty L. Off. v. Telecomm. Premium Serv., Ltd, 156 F.3d 432 (2d Cir. 1998); Erienet, Inc. v. Velocity Net, Inc., 156 F.3d 513 (3d Cir. 1998); Int'l Sci. Tech. Inst. v. Inacom Comm., 106 F.3d 1146 (4th Cir. 1997); Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507 (5th Cir. 1997).

Stonecrafters additionally requests, in its motion to remand, just costs and actual expenses, including attorney fees, incurred as a result of improper removal, pursuant to 28 U.S.C. § 1447(c). An award of fees and costs in [*6] accordance with 28 U.S.C. § 1447(c) is discretionary, which discretion may be based upon the propriety of the removal. Katonah v. USAir, Inc., 876 F. Supp. 984, 990 (N.D. Ill. 1995). Since federal question jurisdiction under the TCPA had not yet been addressed by the Seventh Circuit Court of appeals or this Court, removal under the facts of this case are not without such a proper basis as to justify an award of costs and attorney fees. Eisenmann Corp. v. High Tech Automation, 1994 U.S. Dist. LEXIS 14580, 1994 WL 559057 (N.D. Ill. 1994).

For the foregoing reasons, this cause is hereby remanded to the Circuit Court of McHenry County, Illinois and costs and attorney fees relating to the removal are denied.

Philip G. Reinhard

10-21-03

Case 1:08-cv-01323    Document 21-2    Filed 05/01/2008    Page 35 of 51

Page 1
326 F. Supp. 2d 884, *; 2004 U.S. Dist. LEXIS 12575, **

**HENRY REPAY d/b/a, LAW OFFICES OF HENRY REPAY, Plaintiff, v. THE FLAG COMPANY, INC., Defendant.**

**04 C 3030**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**326 F. Supp. 2d 884; 2004 U.S. Dist. LEXIS 12575**

**July 2, 2004, Decided**
**July 7, 2004, Docketed**

**SUBSEQUENT HISTORY:** Related proceeding at Flag Co. v. Maynard, 2005 U.S. Dist. LEXIS 14150 (N.D. Ill., July 8, 2005).

**DISPOSITION:**      [**1] Plaintiff's motion to remand granted, and his motion for attorneys' fees denied.

**COUNSEL:** For HENRY REPAY, individually and as representative of a class of similarlly situated persons dba Law Offices of Henry Repay, plaintiff: Daniel A. Edelman, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For FLAG COMPANY, INC., THE, defendant: John William Bell, Howard William Foster, Johnson & Bell, Ltd., Chicago, IL.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINION BY:** Robert W. Gettleman

**OPINION**

[*885] *MEMORANDUM OPINION AND ORDER*

Plaintiff Henry Repay filed the instant class action arising from his receipt of an alleged unsolicited facsimile advertisement from defendant, The Flag Company, Inc., on or about February 17, 2004. In relation to this event, plaintiff asserts the following claims: (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I); conversion (Count II); violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III); and property damage (Count IV). Defendant removed the instant action, pursuant to 28 U.S.C § 1441(b), from the Circuit Court of Cook County, Illinois, to this [**2] court.

Plaintiff has moved to remand for lack of subject matter jurisdiction and for attorneys' fees pursuant to 28 U.S.C. § 1447(c). For the reasons discussed herein, plaintiff's motion for remand is granted and his motion for attorneys' fees is denied.

*DISCUSSION*

A defendant may remove to federal court any civil action brought in a state court so long as the district court has original jurisdiction. 28 U.S.C § 1441(a). Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In *Connors v. Amax Coal Co., Inc.,* 858 F.2d 1226, 1229-30 (7th Cir. 1988), the Seventh Circuit explained that 28 U.S.C. § 1331 applies only if: (1) an action "arises under" federal law; *and* (2) "section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." The issue before this court, then, is whether plaintiff's claim under 47 U.S.C. § 227(b)(3) confers exclusive jurisdiction outside [**3] the federal courts.

The language of 47 U.S.C. § 227(b)(3) creates a private right of action that, "a person or entity may, if otherwise permitted by the law or rules of court of a State, bring in an appropriate court of that State." Because 47 U.S.C. § 227 is a federal statute one would think federal subject matter jurisdiction should exist according to the "arising under" stan-

dard of 28 U.S.C. § 1331. The Seventh Circuit has yet to address this issue. Six courts of appeals and three judges in this district, however, have considered this issue, and have all come to the "somewhat unusual conclusion" that there is exclusively state court jurisdiction for a private right of action under 47 U.S.C. § 227(b)(3). *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F.3d 432, 434 (2d Cir. 1998). *See also Murphey v. Lanier,* 204 F.3d 911 (9th Cir. 2000); *ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513 (3d Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287 (11th Cir. 1998), modified, 140 F.3d 898 (11th Cir. 1998); [**4] *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom,* 106 F.3d 1146 (4th Cir. 1997); *Stonecrafters Inc. v. CM Systems, Inc.,* 2003 U.S. Dist. LEXIS 20092, 03 C 50287, 2003 WL 22415976 (N.D.Ill. Oct. 21, 2003); *Bernstein v. New Century Mortgage Corporation,* 2003 U.S. Dist. LEXIS 25663, 02 C 3355 (N.D.Ill. Feb. 12, 2003); *Constr. Consulting Group, Ltd. v. Gersten Fin. & Ins.,* 2002 U.S. Dist. LEXIS 11669, 02 C 3322, 2002 WL 1400472 (N.D.Ill. June 28, 2002).

The lone case to conclude that 47 U.S.C. § 227(b)(3) creates federal subject matter jurisdiction is *Kenro, Inc. v. Fax Daily, Inc.,* 904 F. Supp. 912 (S.D.Ind. 1995), *aff'd on reh'g* 962 F. Supp. 1162 (S.D.Ind. 1997), which was decided before any court of appeals considered the issue. Accordingly, this court agrees with the [*886] aforementioned courts of appeals, and with the three judges within this district, that the language, structure, purpose, and legislative history of 47 U.S.C. § 227(b)(3) all evince exclusive state court jurisdiction.

Defendant argues that there is presumptively concurrent state and federal [**5] jurisdiction unless explicitly stated otherwise. *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 405-6 (7th Cir. 1989). However, cases cited for holding concurrent jurisdiction all dealt with provisions mentioning only federal jurisdiction and not state jurisdiction. That is, because state courts are courts of general jurisdiction, there is a presumption for concurrent jurisdiction for state courts. This door, however, does not swing the other way granting presumptive federal jurisdiction when a statute men-

tions only state court jurisdiction, because federal courts are courts of limited jurisdiction. *ErieNet, Inc.,* 156 F.3d at 516-7 ("The permissive authorization of jurisdiction in state courts does not imply that jurisdiction is also authorized in federal courts.").

Plaintiff also requests attorneys' fees pursuant to 28 U.S.C. § 1447(c). These fees may be awarded at the discretion of the court. At least two courts considering this issue have awarded fees for the attempted removal of TCPA cases. [**6] *Gold Seal Termite & Pest Control Co. v. Directv, Inc.,* 2003 U.S. Dist. LEXIS 11205, 1:03 CV00367, 2003 WL 21508177 (S.D.Ind. Jun 10, 2003); *Dun-Rite Constr., Inc., v. Amazing Tickets, Inc.,* 2004 U.S. Dist. LEXIS 3914, 1:03 CV 2310, 2004 WL 440387 (N.D.Ohio Jan 16, 2004). Nevertheless, "while the courts of appeal have unanimously rejected [federal jurisdiction] arguments, we agree with the acknowledgment of several circuits that the issues are not easy." *Murphey,* 204 F.3d at 914. Based on the counter intuitive outcome of the jurisdictional analysis of this case, and the lack of binding Seventh Circuit precedent, the court declines to award attorneys' fees to the plaintiff.

## CONCLUSION

For the reasons stated herein, plaintiff's motion to remand is granted, and his motion for attorneys' fees is denied.

**ENTER: July 2, 2004**

**Robert W. Gettleman**

**United States District Judge**

## JUDGMENT IN A CIVIL CASE

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's [**7] motion to remand is granted and this cause is remanded to the Circuit Court of Cook County, Il.

Date: July 2, 2004

# EXHIBIT 4

VINCE KWIATKOWSKI, Individually and On Behalf of All Others Simi-
larly Situated, Plaintiff, vs. TEMPLETON GROWTH FUND, INC., and
TEMPLETON GLOBAL ADVISORS LIMITED, Defendants. and JOSEPH
PARISE, JR., as Trustee of the ICON MECHANICAL CONSTRUCTION
AND ENGINEERING 401K RETIREMENT AND SAVINGS PLAN, Indi-
vidually and On Behalf of All Others Similarly Situated, Plaintiff, vs.
TEMPLETON FUNDS INC., and TEMPLETON GLOBAL ADVISORS
LIMITED, Defendants. and EDMUND WOODBURY, Individually and On
Behalf of All Others Similarly Situated, Plaintiff, vs. TEMPLETON
GLOBAL SMALLER COMPANIES FUND, INC., and TEMPLETON IN-
VESTMENT COUNSEL, L.L.C., Defendants.

CIVIL NO. 05-299-GPM, CIVIL NO. 05-300-GPM, CIVIL NO. 05-301-GPM

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF ILLINOIS

2005 U.S. Dist. LEXIS 41946

August 24, 2005, Decided

**SUBSEQUENT HISTORY:** Affirmed by Brad-
fisch v. Templeton Funds, Inc., 179 Fed. Appx.
973, 2006 U.S. App. LEXIS 12394 (7th Cir. Ill.,
May 19, 2006)

**COUNSEL:** [*1]  For Vince Kwiatkowski, Indi-
vidually and on behalf of all others similarly situ-
ated, Plaintiff: Andrew S. Friedman, Francis J.
Balint, Jr., Bonnett, Fairbourn et al., Phoenix, AZ;
Eugene Y Barash, Korein Tillery - St. Louis, St.
Louis, MO; George A. Zelcs, Korein Tillery - Chi-
cago, Chicago, IL; Robert L. King, Swedlow &
King - Chicago, Chicago, IL; Stephen M. Tillery,
Korein - Tillery - Swansea, Swansea, IL.

For Templeton Growth Fund Inc, Templeton Global
Advisors Limited, Defendants: Anthony Zaccaria,
Daniel A. Pollack, Edward T. McDermott, Martin I.
Kaminsky, Pollack & Kaminsky, New York, NY;
Glenn E. Davis, Jacqueline Ulin Levey, Lisa M.
Wood, Raymond R. Fournie, Armstrong Teasdale -
St. Louis, St. Louis, MO.

**JUDGES:** G. Patrick Murphy, Chief United States
District Judge.

**OPINION BY:** G. Patrick Murphy

**OPINION**

**MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

Three actions are before the Court on motions
to dismiss and motions to remand. In accordance
with this Court's normal practice on these issues,
the case was set for a hearing on the pending mo-
tions on August 22, 2005. After reviewing the par-
ties' written submissions, the Court concluded that
oral argument would [*2] add nothing and only
result in the expenditure of more time and expenses
by all involved. Accordingly, the hearing was can-
celed with a promise that this written order would
follow.

**BACKGROUND**

These cases were before the Court once before,
and each was remanded to the state court from
which it came. (See Cause No. 04-38-GPM, Cause
No. 04-179-GPM, and Cause No. 03-761-GPM.)
Defendants did not appeal this Court's remand or-
der.

Following the Seventh Circuit's decision in
Kircher v. Putnam Funds Trust, 403 F.3d 478 (7th
Cir. 2005), each case was removed again. Defen-

dants argue that the *Kircher* decision makes the cases removable under 28 U.S.C. § 1446(b) and 15 U.S.C. § 78bb(f)(2) and § 77p(c). Defendants moved to dismiss, and Plaintiffs filed a timely motion to remand.

## ANALYSIS

In *Kircher,* the Seventh Circuit held that the Securities Litigation Uniform Standards Act ("SLUSA") preempts certain state court securities fraud class actions against mutual funds. Stated simply, the Seventh Circuit found that the broad preemptive effect of SLUSA effectively *blocks* state [*3] court litigation of such claims. *Id.* at 484. Defendants now maintain that the holding in *Kircher* constitutes a "pleading, motion, order or other paper from which it may first be ascertained" that *these* cases have become removable under 28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case ... has become removable....").

*Kircher* taught us, however, that the cases as originally filed *were* removable. Moreover, the Court notes that the cases finding that an appellate opinion is an "order" permitting late removal involve cases where the removing defendant was a party to the appeal. *See Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263, 267 (5th Cir. 2001); *Doe v. American Red Cross,* 14 F.3d 196 (3rd Cir. 1993). Here, as mentioned above, the Templeton defendants were not parties to the *Kircher* appeal. Thus, Section 1446(b) does not extend the [*4] window for removal.

The cases were, however, properly removed under SLUSA's own removal provision. Unlike Section 1446, SLUSA imposes no time limits on removal. SLUSA's removal and preemption provisions are triggered when four conditions are met: (1) the underlying suit is a "covered class action,"

(2) the action is based on state or local law, (3) the action concerns a "covered security," and (4) the defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance "in connection with the purchase or sale" of that security." *Kircher,* 403 F.3d at 481; *see also Disher v. Citigroup Global Mkts., Inc.,* 419 F.3d 649, 2005 WL 1962942, at *4 (7th Cir. 2005). A review of the allegations of the complaints in these three cases reveals that the four conditions are met. *Kircher* and *Disher* mandate that this Court dismiss all of Plaintiffs' state law claims as barred by SLUSA.

## CONCLUSION

For these reasons, the pending motions to remand are **DENIED**, and the motions to dismiss are **GRANTED**. These actions are **DISMISSED** with prejudice. The Clerk is **DIRECTED** to enter judgment accordingly, [*5] and the parties shall bear their own costs.

**IT IS SO ORDERED.**

DATED: 08/24/05

s/ G. Patrick Murphy

Chief United States District Judge

## JUDGMENT IN A CIVIL CASE

**DECISION BY COURT.** The issues having been heard, and a decision having been rendered,

**IT IS ORDERED AND ADJUDGED** that Plaintiffs' claims are **DISMISSED with prejudice** pursuant to Order filed on August 24, 2005. The parties shall bear their own costs.

**DATED:** 8/24/05

APPROVED: s/ G. Patrick Murphy

G. PATRICK MURPHY

CHIEF U.S. DISTRICT JUDGE

# EXHIBIT 5

**JEANNE BOSKY, Plaintiff-Appellant, versus KROGER TEXAS, LP; KROGER LIMITED PARTNERSHIP I, Defendants-Appellees.**

**No. 01-40715**

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

**288 F.3d 208; 2002 U.S. App. LEXIS 6431**

**April 8, 2002, Decided**

**PRIOR HISTORY:**     [**1] Appeal from the United States District Court For the Eastern District of Texas. 4:00-CV-284. Paul N Brown, US District Judge.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For JEANNE BOSKY, Plaintiff - Appellant: John L McCraw, III, McCraw & McCraw, McKinney, TX.

For KROGER TEXAS, LP, KORGER LIMITED PARTNERSHIP I, Defendants - Appellees: Donna C Peavler, Hartline, Dacus, Dreyer & Kern, Dallas, TX.

**JUDGES:** Before HIGGINBOTHAM, DeMOSS, and BENAVIDES, Circuit Judges.

**OPINION BY:** PATRICK E. HIGGINBOTHAM

**OPINION**

[*209] PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from a grant of summary judgment in a slip and fall case. The plaintiff challenges the timeliness of the removal to federal court of this diversity case and the grant of summary judgment on the merits of her claim for personal injury suffered in a slip and fall at a Kroger store. We affirm. We agree with the grant of summary judgment on the merits and that the case was properly removed. We write further only to explain the standard for resolving the question of timeliness of removal.

I

There is a difference in language in the two paragraphs of 28 U.S.C. § 1446(b) describing the documents which trigger the time limits for notices of removal. The first paragraph governs notices of removal based on an "initial pleading *setting forth* the claim for relief upon which such action or proceeding is based."[1] By contrast, the second paragraph governs notices of removal based on "a copy of an amended pleading, motion, [**2] order or other paper from which it *may first be ascertained* that the case is one which is or has become removable."[2]

1  28 U.S.C. § 1446(b) (emphasis added).
2  *Id.* (emphasis added).

Bosky's original petition failed to set forth a removable claim, stating only a  [*210] claim for unliquidated damages of an unspecified amount in excess of $ 50,000, pursuant to Tex. R. Civ. P. 47(b). The parties agree that the complaint was insufficient to trigger the 30-day period for removing the case to federal court and that this issue is controlled by the second paragraph of section 1446.

Although not at issue here, the standard for determining whether a notice of removal is timely filed under the first paragraph of section 1446(b) is important for comparative purposes. The time limit in the first paragraph is triggered "only when that pleading *affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."[3] [**3] Bosky argues that we should apply this standard governing the timeliness of notices of removal based on information from a party's initial pleading to the determination of the timeliness of a notice of removal based on "receipt by the defendant, through service or otherwise, of a copy of ... other

paper from which it may first be ascertained that the case is one which is or has become removable" under the second paragraph of section 1446(b).

> 3   *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) (emphasis added); *see also Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (discussing the *Chapman* rule and holding that, "by the same token, the removal clock began to run in the instant case only when the defendants received a pleading that revealed on its face that [the plaintiff] was asserting a cause of action based on federal law").

We held in *Chapman v. Powermatic, Inc.* [4] that "for the purposes of the first paragraph of § 1446(b), the [**4] thirty day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." [5] We noted that this rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know" and that "the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth, by adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." [6] We rejected a due diligence requirement for determining whether a case is removable, [7] insisting that "the defendant's subjective knowledge cannot convert a case into a removable action." [8] We have since held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage [**5] claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal. [9] Notably, however, the removing defendant is always required to "prove by a preponderance of the evidence that the amount in controversy exceeds $ 75,000." [10]

> 4   969 F.2d 160 (5th Cir. 1992).
> 5   *Id.* at 163 (footnote omitted).
> 6   *Id.*

> 7   *See id.*
> 8   *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).
> 9   *See, e.g., Marcel v. Pool Co.*, 5 F.3d 81, 82-85 (5th Cir. 1993). *See generally De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408-12 (5th Cir. 1995).
> 10   *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[*211] II

"Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. [**6] To "set forth" means to "publish" or "to give an account or statement of." [11] "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty." [12] The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

> 11   Webster's Ninth New Collegiate Dictionary 1077 (1990).
> 12   *Id.* at 107.

The Tenth Circuit, following similar reasoning, noted in this context in *DeBry v. Transamerica Corp.*: [13]

> Section 1446(b) uses the word "ascertained" in connection with the giving of notice. Webster's New Collegiate Dictionary (1975), defines the term "ascertain" as "to find out or learn with certainty." Given that the deposition might have placed the person on inquiry, it was not sufficient to permit him to learn with certainty. [14]

The Tenth Circuit further observed that, "if the statute is going to run, the notice ought to be unequivocal" and "should not be one which may have a double [**7] design." [15] Following *DeBry*, the Tenth Circuit has required that the notice in "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" be unequivocal. [16]

13  601 F.2d 480 (10th Cir. 1979).

14  601 F.2d at 489.

15  *Id.*

16  *See, e.g., Huffman v. Saul Holdings Ltd. P'ship,* 194  F.3d 1072, 1078 (10th Cir. 1999); *Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1036 (10th Cir. 1998).

We follow the Tenth Circuit's *DeBry* rule. The *Chapman* measure of the "affirmatively reveals on its face" standard does not apply to the second paragraph of section 1446(b), but rather the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial [**8] economy. It should reduce "protective" removals by defendants faced with an equivocal record. [17] It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

17  *Cf. Chapman,* 969 F.2d at 163 (rejecting a rule because it would promote premature "protective" removals).

III

This reading of the second paragraph of section 1446(b) is not in tension with our long-standing canon of statutory interpretation that "removal statutes are to be construed strictly against removal and for remand." [18] This canon does not trump a plain language reading of the statute's terms. [19] Moreover, this reading [*212] of the second paragraph ought to reduce removals, consistent with the policy behind this canon. This supposes that a defendant will be less likely to act on more equivocal information provided in "an amended pleading, [**9] motion, order or other paper" because such a "protective" removal is no longer necessary to avoid the risk of losing his right to removal by the lapse of time.

18  *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir. 1996).

19  *See United States v. Fitch,* 137 F.3d 277, 282 (5th Cir. 1998); *cf. Chickasaw Nation v. United States,* 534 U.S. 84, 122 S. Ct.

528, 535, 151 L. Ed. 2d 474 (2001) (observing that canons "are not mandatory rules" but rather are guides "designed to help judges determine the Legislature's intent as embodied in particular statutory language" and so need not be conclusive, such that "other circumstances evidencing congressional intent can overcome their force").

IV

Nor do we believe the standard we adopt today conflicts with our cases holding that a defendant can still show a case to be removable on the basis of a state court complaint which does not explicitly state a demand for damages exceeding the threshold amount in controversy. [**10] [20] Those holdings are not relevant here because the timeliness requirement of the second paragraph of section 1446(b) does not play unless "the case stated by the initial pleading is not removable." [21] Notably, our limited case law holding that the jurisdictional amount in controversy requirement was proven by "other paper" pursuant to the second paragraph of section 1446(b) involved facts presented in the "other paper" from which it would be "unequivocally clear and certain" under the standard announced today that the amount in controversy requirement was met and the case was removable under federal diversity jurisdiction. [22]

20  *See Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000); *Luckett,* 171 F.3d at 298; *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1336 (5th Cir. 1995); *Free v. Abbott Labs. (In re Abbott Labs.),* 51 F.3d 524, 526-27 (5th Cir. 1995); *de Aguilar v. Boeing Co.,* 11 F.3d 55, 57 (5th Cir. 1993); *Marcel,* 5 F.3d at 84; *Fontenot v. Global Marine, Inc.,* 703 F.2d 867, 871 n.7 (5th Cir. 1983).

[**11]

21  *Chapman,* 969 F.2d at 161.

22  *See S.W.S. Erectors,* 72 F.3d at 491-92, 494 (holding that time requirements for filing a notice of removal were triggered by the defendant's receipt of a transcript of the plaintiffs' president's deposition in which he testified that the actual damages fell between $ 70,000 and $ 80,000, when the minimum amount in controversy for diversity jurisdic-

288 F.3d 208, *; 2002 U.S. App. LEXIS 6431, **

tion was $ 50,000); *cf. Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994) ("Wilson makes several other arguments, all of which fail. .... Second, Wilson argues that the complaint, which had no *ad dammum* clause, did not state claims that facially involved more than $ 50,000. ... Because the record contains a letter, which plaintiff's counsel sent to de-

fendants stating that the amount in controversy exceeded $ 50,000, it is 'apparent' that removal was proper. *See Marcel v. Pool Co.*, 5 F.3d 81, 84 (5th Cir. 1993) (allowing removal when it was facially apparent that the claims exceeded $ 50,000).").

AFFIRMED.

# EXHIBIT 6

# IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| BUSINESS PRO COMMUNICATIONS,<br>INC., an Illinois corporation, individually<br>and as the representative of a class of<br>similarly-situated persons,<br><br>                   Plaintiff,<br><br>           v.<br><br>EXPRESS PRODUCTS,<br><br>                 Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 04 L 1043<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES

Plaintiff, BUSINESS PRO COMMUNICATIONS, INC., by and through its attorneys, pursuant to Supreme Court Rule 213, answers Defendant's First Set of Interrogatories as follows:

1.    Identify the name, address and position of all persons answering or contributing to the answering of the within Interrogatories, providing the specific numbers of the Interrogatories that they assisted in answering.

    **ANSWER:** Roop Patel with the assistance of counsel.

2.    Identify all lay and expert witnesses who have discoverable information in the instant litigation, describing the information they possess.

    **ANSWER:** Roop Patel will testify as to Plaintiff's receipt of Exhibit A to the Complaint by Plaintiff without Plaintiff's prior express permission or invitation. Other witnesses are unknown at this time.

3.    Identify the name, address and telephone numbers of all persons and/or companies belonging to the class that you seek to certify in the instant action. To the extent that some persons and/or companies of the putative class have not yet been identified, list each person/company whose identity was known to Plaintiff Business Pro at the time the within lawsuit was filed

    **ANSWER:** This information is within the custody and control of Defendant.

4.    If in response to Interrogatory No. 3, Business Pro Communications, Inc. has not identified any party beyond itself, state with specificity all information and evidence supporting Plaintiff's allegation in paragraph 17(a) of the Complaint that "on information

and belief, the class consists of thousands of persons in Illinois and throughout the United States and is so numerous that joinder of all members in impracticable."

**ANSWER:** Exhibit A.

5.    Describe the date, time and content of the facsimile transmissions that were sent to the persons and/or companies identified in Interrogatory No. 3, explaining why these respective transmissions entitle these persons and/or companies to participate in the instant litigation.

**ANSWER:** This information is within the custody and control of Defendant.

6.    Please state the number of unsolicited facsimile advertisements that Business Pro Communications, Inc. claims to have received from Express Products. Identify the dates of receipt of each allegedly unsolicited facsimile advertisement received from Express Products.

**ANSWER:** Other than Exhibit A, investigation continues. In addition, this information is within the custody and control of Defendant.

7.    Did Business Pro Communications, Inc. ever contact Express Products and advise Express Products that it did not want to receive facsimile advertisements? If the answer to this question is in the affirmative, disclose the name and address of the individual who contacted Express Products and date of each contact.

**ANSWER:** No.

8.    Identify any other corporation, business entity, or individual who claims to have received unsolicited facsimile advertisements from Express Products other than Business Pro Communications, Inc.

**ANSWER:** This information is within the custody and control of Defendant.

9.    Identify with specificity, or attach a copy, of any document or tangible evidence supporting Business Pro Communications, Inc.'s allegation that Express Products violated the TCPA and/or the Illinois Consumer Fraud and Deceptive Practices Act by transmitting unsolicited facsimiles to Business Pro Communications, Inc.

**ANSWER:** Exhibit A.

10.   If Plaintiff claims that any facsimile transmission communicated by Express Products, Inc. to Plaintiff, or any member of the putative class failed to comply with the requirements of 47 CFR §68.3189(d), identify with specificity how the subject facsimile transmissions failed to comply with this statutory requirement.

**ANSWER:** See Exhibit A.

11.    List all other lawsuits that Business Pro Communications, Inc. has filed under the TCPA and/or the Illinois Consumer Fraud Act, providing the following information:

      (a)     The party sued;

      (b)     The lawsuit's venue and case number;

      (c)     The specific claims stated in the Complaint;

      (d)     The specific conduct violating the aforementioned law(s);

      (e)     Whether Business Pro attempted to certify a class in that litigation;

      (f)     The members of any class certified in that litigation;

      (g)     The date and manner in which the lawsuit was resolved; and

      (h)     Whether the case was dismissed as frivolous, or triggered sanctions pursuant to IL S.Ct. Rule 137.

**ANSWER:** Plaintiff objects to this Interrogatory as it seeks information which is not relevant to the issues in this case and will not lead to the discovery of other relevant information.

12.    For the three year period prior to this litigation, describe the company policy Business Pro Communications, Inc. had in place for providing other companies with consent to transmit facsimile advertisements, including the following information:

      (a)     When the policy was implemented;

      (b)     Who had authority to grant such consent on Business Pro's behalf;

      (c)     The manner in which such consent was manifested and recorded for future reference;

      (d)     What the prospective transmitter demonstrated before Business Pro granted such consent; and

      (e)     The frequency with which consent was granted.

**ANSWER:** Business Pro has never provided consent to the receipt of any facsimile advertisements.

13.    For the three year period prior to this litigation, identify each occasion that a company requested Business Pro Communications, Inc.'s consent to transmit facsimile advertisements, providing the following information:

      (a)     The date of the request;

      (b)     The requesting party's identity;

      (c)     The identity of the Business Pro's representative who received the request;

      (d)     Whether request was granted; and

      (e)     The manner or form in which consent was granted or denied.

**ANSWER:** Business Pro has never provided consent to the receipt of any facsimile advertisements.

14.    Describe all communications that any Business Pro Communications, Inc. agent and/or representative had with any Express Products, Inc. agent or representative prior to the filing of the instant lawsuit, including the following information:

    (a)    The identities of the parties participating in the communications;

    (b)    The dates of the communications;

    (c)    The forms of communications (e.g. telephone conversation, letter, etc.); and

    (e)    The substance of the communications.

**ANSWER:** None.

15.    Itemize all damages that Business Pro Communications, Inc. alleges to have incurred as a result of Express Products, Inc.'s alleged transmission(s).

**ANSWER:** Plaintiff claims its statutory damages. Investigation continues as to Count II and III.

16.    Describe all efforts that Business Pro Communications, Inc. made to minimize and/or mitigate its alleged damages:

**ANSWER:** Plaintiff filed this lawsuit to restrain this Defendant from continuing to send Plaintiff unsolicited fax advertisements without Plaintiff's prior express permission or invitation.


_____

One of Plaintiff's Attorneys


Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

Phillip A. Bock
DIAB & BOCK
20 N. Wacker Drive, Suite 1741
Chicago, IL  60606
Telephone:  312/334-1970


4

## CERTIFICATE OF SERVICE

I, the undersigned, state that on October 17, 2005, I served a true and correct copy of *Plaintiff's Answers to Defendant's First Set of Interrogatories* on the party listed below by depositing it in the U.S. mail at Rolling Meadows, IL at or before 5:00 p.m. with proper postage prepaid:

Kevin Campbell
LaBarge, Campbell & Lyon, LLC
200 W. Jackson Blvd., Suite 2050
Chicago, IL  60606

[X]  Under penalties as provided by law pursuant
     to 735 ILCS 5/1-109, I certify that the statements
     set forth herein are true and correct.

_____
One of Plaintiff's Attorneys

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

Phillip A. Bock
DIAB & BOCK
20 N. Wacker Drive, Suite 1741
Chicago, IL  60606
Telephone:  312/334-1970

5

## <u>VERIFICATION BY CERTIFICATION</u>

     Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure, I, Roop Patel, certify that as President of Business Pro Communications, Inc., I am authorized to make this verification, that I have read the foregoing Answer to Defendant's First Set of Interrogatories, and that said answers therein are true and correct, except to those matters alleged on information and belief, and as to such matters I certify as aforesaid that I verily believe the same to be true.

Roop Patel